Nancy GORMAN, Plaintiff,

v.

**ABBOTT LABORATORIES, Eli Lilly & Co., The Upjohn Co., E.R. Squibb & Sons, Inc., Merck Sharpe & Dohme Co., Inc., and Burroughs-Wellcome Co., Defendants.**

Civ. A. No. 86–0035–S.

United States District Court,
D. Rhode Island.

March 17, 1986.

McBurney & McBurney, Cristine L. McBurney, John F. McBurney, Jr., Pawtucket, R.I., for plaintiff.

Haight, Dickson, Brown & Bonesteel, Robert L. Dickson, Santa Monica, Cal., and Hanson, Curran & Parks, William A. Curran, Dennis McCarten, Providence, R.I., for defendant Squibb.

Gunning LaFazia & Gnys, Edward L. Gnys, Jr., Providence, R.I., for defendant Abbott.

Roberts, Carroll, Feldstein & Tucker, Bruce G. Tucker, Dennis J. Roberts, II, Providence, R.I., for defendant Upjohn.

Rice, Dolan & Kershaw, John F. Dolan, Judith Crowell, Providence, R.I., for defendant Burroughs.

Gidley, Lovegreen & Sarli, Thomas D. Gidley, Providence, R.I., for defendant Merck.

Goodwin, Procter & Hoar, Marshall Simonds, Anthony M. Feeherry, Timothy J. Langella, Boston, Mass., and Edwards & Angell, Richard M. Borod, Providence, R.I., for defendant Lilly.

## OPINION AND ORDER

SELYA, District Judge.

Rights of removal of various types have often been freighted with controversy.[1] This case falls in that mode and presents a question as to the propriety vel non of the transfer of this action from the Rhode Island Superior Court to this tribunal under the aegis of 28 U.S.C. § 1446(b). The tale follows.

### I. TRAVEL

This case was commenced on May 24, 1985 in the state superior court. The plaintiff, Nancy Gorman, a citizen and resident of Rhode Island, complained of a single party defendant, Abbott Laboratories (Abbott). The gravamen of Gorman's action, then as now, sounded in negligence and strict product liability regarding the manufacture, distribution, and sale of diethylstilbestrol (DES). Gorman claimed that her mother, during pregnancy, ingested a form of DES which had been brought to market by Abbott, thereby causing the injuries later manifested by the plaintiff. She sought damages in the sum of $1,000,000.

Inasmuch as Abbott was and is an Illinois corporation with its principal place of

---

1. As early in our history as 1810, Tecumseh, chief of the Shawnees, delivered an impassioned protest to Joseph Barron, an emissary from President James Madison, declaiming:

   These lands are ours.·
   No one has a right
   to remove us ... The Great
   Spirit above has
   appointed this place for
   us, on which to
   light our fires, and
   here we will remain.

business in that state, diversity jurisdiction existed under 28 U.S.C. § 1332(a), and the case was removable ab initio under 28 U.S.C. § 1441(a), Abbott apparently preferred the view from the state court, however, and neglected to petition for removal within the statutory period provided by 28 U.S.C. § 1446(b).[2] Abbott answered and the parties began to engage in substantial discovery. Along the way, the plaintiff decided to broaden her litigation horizons and did so by moving to amend her complaint to add additional party defendants. The motion to amend was granted in the state court on January 2, 1986. On the same date, the plaintiff filed her amended complaint.

The amended complaint did not materially alter the basic shape of Gorman's claim, but extended its reach to encompass a quintet of defendants not originally named under a theory of market share liability. *See, e.g., McElhaney v. Eli Lilly & Co.,* 564 F.Supp. 265, 269–71 (D.S.D.1983); *Hardy v. Johns-Manville Sales Corp.,* 509 F.Supp. 1353, 1357–60 (E.D.Tex.1981). *See generally,* Note, *Market Share Liability: An Answer to the DES Causation Problem,* 94 Harv.L.Rev. 668 (1984). The five neoteric defendants were each served no later than January 6, 1986.

As was true of the original defendant Abbott, each and all of the five afterthought defendants were entirely diverse vis-a-vis the plaintiff. The defendants in question are Eli Lilly & Co. (Lilly), the Upjohn Co. (Upjohn), E.R. Squibb & Sons, Inc. (Squibb), Merck Sharpe & Dohme Co., Inc. (Merck), and Burroughs-Wellcome Co. (BW). Lilly is an Indiana corporation with its principal place of business in that state. Upjohn is a Delaware corporation headquartered in Michigan. Squibb is also a Delaware corporation, having its principal place of business in New Jersey. Merck is a division of Merck & Co., Inc., a New Jersey corporation; its main place of business is in that state. And, BW is a North Carolina corporation bivouacked there.

Merck, acting alone and to its own behoof, promptly sought greener pastures. On January 17, 1986, well within the thirty day window provided by 28 U.S.C. § 1446(b), it removed the action to this court. The plaintiff seasonably moved to remand. Following a chambers conference held on February 5, 1986 in this court (at which a briefing schedule was established anent the motion to remand), all of the other defendants (including Abbott) joined in Merck's petition for removal. All interested parties have briefed the issue. Oral arguments were heard on March 11, 1984. This rescript, therefore, comprises the court's findings and conclusions in respect to the question presented.

## II. THE STATUTORY FRAMEWORK

The right of removal is entirely statutory in nature, and the procedures for removal are cut from the same cloth. *See* 28 U.S.C. § 1441 *et seq.* It is well settled that the removal statutes must be strictly construed; a federal court may encroach upon a state court's right to hear and determine cases properly brought in a state forum only in fidelity to the express authority granted by Congress. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941); *Bradley v. Maryland Casualty Co.,* 382 F.2d 415, 419 (8th Cir.1967); *Perrin v. Walker,* 385 F.Supp. 945, 947 (E.D.Ill.1974).

■ 28 U.S.C. § 1446(b), quoted *ante* n. 2, is a salient integer within the procedural

---

**2.** 28 U.S.C. § 1446(b) provides:

(b) The petition for removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is

not required to be served on the defendant, whichever period is shorter.

If the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

equation. The statute provides in substance that, if a (removal-eligible) case is commenced in a state tribunal and is not removed by petition filed within thirty days of a respondent's initial receipt of the complaint, it may not be removed thereafter. In regard to removal as in other contexts, "[t]ime is the thief you cannot banish." P. McGinley, *Ballade of Lost Objects* (1954). The thirty day limitation mandated by § 1446(b) has a dual purpose. On the one hand, it forecloses a defendant from adopting a "wait and see" approach in the state court; specifically, it prevents a second bite at the jurisdictional apple if a defendant (belatedly) perceives that the case is proceeding other than to his liking. *See Wilson v. Intercollegiate (Big Ten) Conference Athletic Association,* 668 F.2d 962, 965 (7th Cir.1982). On the second hand, the statutory requirement minimizes the delay and waste of resources involved in starting a case over in federal court after substantial proceedings have taken place in the state court. *Id.*

■ To be sure, several courts have held that compliance with the thirty day time limitation for removal is not a jurisdictional prerequisite in the literal sense, so that, in special circumstances, a federal court may hear a late-removed case when the plaintiff waives the right to have the action remanded to state court. *E.g., Leininger v. Leininger,* 705 F.2d 727, 729 (5th Cir.1983); *Adams v. Western Steel Buildings, Inc.,* 296 F.Supp. 759, 761 (D.Colo.1969); *Meyers-Arnold Company v. Maryland Casualty Company,* 248 F.Supp. 140, 145 (D.S. C.1965). But, although noncompliance with the time restraints does not, in itself, oust the federal court of jurisdiction, § 1446(b) is not a toothless dragon. The great weight of authority holds that, even if the statute is seen as modal rather than jurisdictional, "the time limitation is mandatory and must be strictly applied and where a party fails to file a petition within the applicable time limits he is [thereafter] precluded from doing so." *Perrin v. Walker,* 385 F.Supp. at 948. *See also Percell's Inc. v. Central Telephone Co.,* 493 F.Supp. 156, 157 (D.Minn.1980); *Friedrich v. Whittaker Corp.,* 467 F.Supp. 1012, 1014 (S.D.Tex. 1979); *Vendetti v. Schuster,* 242 F.Supp. 746, 754 (W.D.Pa.1965); *Seigler v. American Surety Company,* 151 F.Supp. 556, 559 (N.D.Cal.1957). To hold otherwise would, it seems, run athwart the fundamental purposes underlying congressional fashioning of the thirty day limitation period.

■ Thus, under the prevailing view, neither a stipulation of the parties nor an order of the state court may extend the time within which a removal petition may be docketed. *See, e.g., Sunbeam Corp. v. Brazin,* 138 F.Supp. 723, 725 (E.D.Ky. 1956); *Burns v. Standard Life Insurance Co. of Indiana,* 135 F.Supp. 904, 906–07 (D.Del.1955). In addition, the federal district court does not have authority to elongate this time span pursuant to either Fed. R.Civ.P. 6(b), *Hamilton v. Hayes Freight Lines,* 102 F.Supp. 594, 597 (E.D.Ky.1952), or Fed.R.Civ.P. 6(e). *E.g., Ross v. Barrett Centrifugals,* 580 F.Supp. 1510, 1512 (D.Me.1984); *Youngson v. Lusk,* 96 F.Supp. 285, 289 (D.Neb.1951).[3]

As a corollary proposition, it is established beyond peradventure that, by virtue of a fair reading of 28 U.S.C. § 1446(a), all defendants who have been served and who are eligible to join the removal petition must so join. *Chicago, Rock Island and Pacific Railway Co. v. Martin,* 178 U.S. 245, 248, 20 S.Ct. 854, 855, 44 L.Ed. 1055 (1900); *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen and Assistants Local 349,* 427 F.2d 325, 326–27 (5th Cir. 1970); *Bradford v. Harding,* 284 F.2d 307, 309 (2nd Cir.1960); *Friedrich,* 467 F.Supp. at 1013. "In other words, unanimity among all defendants substantively entitled to remove is required for removal." *Id.*

---

**3.** Fed.R.Civ.P. 6(a), which by its terms extends to "any period of time prescribed or allowed . . . by any applicable statute," does have relevance in the § 1446(b) context. Thus, computation of the thirty day period must be derived on the basis of that rule. *E.g., Johnson v. Harper,* 66 F.R.D. 103, 104–05 (E.D.Tenn.1975).

■ There are three basic exceptions to this rule in a diversity case: (i) nominal or formal parties are not required to join in the removal petition, *Albonetti v. GAF Corp.-Chemical Group*, 520 F.Supp. 825, 827 (S.D.Tex.1981), (ii) defendants who have not yet been served with process at the time of the petition for removal are not required to conjoin, *Pullman v. Jenkins*, 305 U.S. 534, 540–41, 59 S.Ct. 347, 350, 85 L.Ed. 334 (1939), and (iii) distinct and independent claims or causes of action may be separately removable pursuant to 28 U.S.C. § 1441(c). *Perrin*, 385 F.Supp. at 947. The instant defendants have not urged the applicability of any of these exceptions to the case at bar.

## III. ISSUE PRESENTED

■ Refined to their barest essence, the circumstances of this case reflect that the plaintiff sued out a removable complaint against Abbott; that Abbott forewent its right to transfer the case to a federal forum; that, when the other defendants were added, Merck and Merck alone filed a timely petition for removal; that the remaining defendants (including Abbott) joined in Merck's petition after the motion to re-

mand was filed [4] (but before the expiration of thirty days from the date of service of the amended complaint); [5] that none of the defendants is a nominal or formal party; and that the plaintiff's claims against all of the defendants are so closely intertwined that the prophylaxis of 28 U.S.C. § 1446(c) is not available.

The following questions emerge under § 1446(b): if a case initially filed in state court is removable to federal court but the defendant eschews the exercise of its right to remove, may that right be revived when the plaintiff subsequently (well after the expiration of the original thirty day period) amends her complaint to add new party defendants, who then seek to remove and who procure the original defendant's joinder in the removal? And if not, what effect does the demise of the original defendant's once and former right of removal have on the afterthought defendants' joint or several right(s) to remove?

## IV. DISCUSSION

The courts which have tiptoed through removal gardens analogous to that at bar have most frequently acted in what might

4. It is logically consistent that all defendants need not join in the removal petition when it is filed, so long as all do so within the statutory period. *See Stangard Dickerson Corp. v. United Electrical Radio and Machine Workers of America, Local 1218,* 33 F.Supp. 449, 451 (D.N.J.1940) (codefendants may consent to removal after petition filed). *Cf. Pullman v. Jenkins,* 305 U.S. at 540–41, 59 S.Ct. at 350 (failure of defendants not served with process prior to petition for removal to join therein does not defeat removal). Plaintiff argues that the joinders filed after she moved to remand are ineffectual, *citing Crawford v. Fargo Manufacturing Co.,* 341 F.Supp. 762 (M.D.Fla.1972). *Crawford* does not, however, bear the weight which Gorman assigns to it. In *Crawford,* the defendants' joinders were made not only after the plaintiff had moved to remand, but also after the thirty day limit, 28 U.S.C. § 1446(b), had expired. 341 F.Supp. at 762–63. For this latter reason, and this reason only, the court treated the belated coaction as nugatory. *Id.* at 763–64.

5. Plaintiff does not agree with this assessment. She contends that one or more of the defendants failed to join in the removal petition within the thirty day period. The five added defendants were served on January 6, 1986. The thirty

day period, calculated from the following day forward, *see* Fed.R.Civ.P. 6(a) ("The day of the act, event or default from which the designated period of time begins to run shall not be included."); *see also ante* n. 3, expired on February 5, 1986. Lilly, Squibb and BW all filed notices of concurrence in Merck's removal petition on February 5; those notices were indubitably timely. The joinders filed by both Upjohn (February 6) and Abbott (February 7) were arguably unseasonable. But, Abbott lodged a written objection to the plaintiff's motion to remand on February 5, which could be considered a concurrence in Merck's removal petition. *Cf. Lopez v. Bulova Watch Co. Inc.,* 582 F.Supp. 755, 764–65 (D.R.I.1984) (rejecting the "absurd elevation of form over substance"). And, Upjohn's counsel did state at the February 5 chambers conference that Upjohn supported Merck's removal initiative. The court need not pass definitive judgment upon these technical niceties, however, because the case is susceptible to disposition on another ground. *See* text *post.* For the sake of argument, all joinders will be considered to have been timely made within the thirty day limitation period.

be termed "staggered service" cases. In the typical scenario, a plaintiff sues multiple defendants, who are served in random sequence. A defendant which is served toward the end of this temporal daisy chain seeks to remove the action: that defendant acts within thirty days of its receipt of the initial pleading, but after earlier-served defendants have let their respective thirty day periods run without incident. (It must be remembered that there is no uniform "D day" applicable to *all* defendants; each has thirty days from its receipt of the initial pleading within which to remove, 28 U.S.C. § 1446(b), so if defendants are served on different dates, their action deadlines will also be different.) In such a situation, courts have been consentient in holding that, even if the movant secures the acquiescence of the earlier-served defendants in the removal initiative, the petition must, upon timely objection by the plaintiff, be denied. *See Friedrich*, 467 F.Supp. at 1014; *Transport Indemnity Co. v. Financial Trust Co.*, 339 F.Supp. 405, 409 (C.D.Cal.1972); *Perrin*, 385 F.Supp. at 948.

■ The reasoning of these courts is impeccable. The right to remove is of finite duration; if not activated promptly, it self-destructs. Once Humpty-Dumpty has toppled from the wall, he cannot be put back together again. Failure of a defendant to embark upon removal within the statutorily allotted time causes the right to perish. Such neglect cannot be cured retroactively by joining a subsequently-served defendant's removal pavane. *Friedrich*, 467 F.Supp. at 1014; *Transport Indemnity*, 339 F.Supp. at 409; *Perrin*, 385 F.Supp. at 945; *Manis v. North American Rockwell Corp.*, 329 F.Supp. 1077, 1078 (C.D.Cal. 1971). The first defendant having irretrievably lost the right to remove, it has likewise lost the facility effectively to consent to any other defendant's attempt to remove the action. That being so, and all defendants being required to join in a proper removal petition in a diversity case, *see ante* Part II, the first-served defendant's debarment vitiates the (timely) application of the later-served defendant.

In the staggered service case, there is usually a window of some amount of time between service on the first defendant and service on the party seeking to remove; this window often allows the removing defendant to endeavor to persuade the earlier-served defendant to consent to or join in the petition for removal within thirty days of service on the first defendant. Many courts have placed considerable emphasis on this fact in remanding the action to state court. *See, e.g., Hill v. Phillips, Barratt, Kaiser Engineering, Ltd.*, 586 F.Supp. 944, 946 (D.Me.1984) (removing defendant received complaint on January 31, 1984 and had more than ten days to convince original defendant to join in or consent to removal before original defendant's thirty days had expired). And in this sense, the staggered service cases are distinguishable here: Abbott had long since made its state court bed when Merck and the other "new" defendants were brought to bar.

In order to explore whether or not this distinction makes a legally cognizable difference, it is necessary to turn to a second genre of cases, which may be termed "closed window" cases. These are similar to the staggered service cases (indeed, the category includes some staggered service cases), yet different in that the time window within which to persuade the first-served defendant of the desirability of a federal forum has been firmly shut by the time of service on the defendant who wishes to remove. Nevertheless, a plain majority of federal courts have decided that even these actions must be remanded. In doing so, many courts engage in an analysis that looks for improper motive on the part of the plaintiff in respect to the manner in which the defendants were served. *See, e.g., Schmidt v. National Organization of Women*, 562 F.Supp. 210, 215 (N.D.Fla.1983) (delay in service on removing defendant due to defendant's failure to comply with Florida statute requiring foreign corporation to designate registered agent with Secretary of State). Other courts, however, treat the perceived need for inquiry into the plaintiff's motiva-

tion as a wholly superfluous exercise. *See, e.g., Transport Indemnity,* 339 F.Supp. at 409 (failure of defendant to seek removal within thirty day period equivalent to decision not to remove; that decision, once made, is irrevocable).

■ The case at bar differs somewhat from the prototypical closed window case, in that, rather than a mere delay in service of some (but less than all) of the defendants, the second tier of respondents have been engaged via an amended complaint adding new parties, filed some seven months after the thirty day limit had expired as to the original defendant (Abbott). It is unlike the ordinary staggered service cases in that Merck (the removing defendant) had not the slightest opportunity to convince the original defendant to consent to the removal petition at a time when the latter's assent would have been effective. It is more akin to the closed window cases, but it is unlike those cases because of the addition of new parties well after the fact. Yet, those differences are of degree and not of kind. One point remains crystal clear: "each and every defendant who can meet the jurisdictional requirements of 28 U.S.C. § 1441 must join in a petition for removal in order for the petition to be valid." *McKinney v. Rodney C. Hunt Co.,* 464 F.Supp. 59, 62 (W.D.N.C.1978). That black letter standard has not been, and cannot be, met in this case, as Abbott, by reason of having slept upon its opportunity to escape to a federal forum, has forever forfeited the right to hop on a later-served defendant's removal bandwagon.

Though remand seems inexorable in the albedo of the foregoing, Merck argues that such a result is fundamentally unfair. By the time it entered the case, its thesis runs, the casement was nailed shut through no fault of its own; it had been deprived of any chance to persuade the original defendant to join in the quest for removal. That is so—but, in this respect, the movant's position is no more untenable than in the classic closed window cases. And, as noted earlier, courts have, by and large, felt obliged to remand in those situations.

*E.g., Crawford,* 341 F.Supp. at 763; *Transport Indemnity,* 339 F.Supp. at 409. Moreover, there is no overriding inequity. If all defendants had been served simultaneously, Merck's desire to remove would have been stymied entirely if Abbott had refused to march in the parade. By waiving its own right of removal, Abbott is estopped, presently, from tendering a valid consent to removal; it is compelled by its prior conduct to spurn Merck's imprecations. There is nothing unfair about holding a party to the natural consequences of its procedural blunders. *Cf. Silvia v. Laurie,* 594 F.2d 892, 893 (1st Cir.1979) (notice of appeal untimely when not brought within sixty days of date of judgment); *Jakobsen v. Massachusetts Port Authority,* 520 F.2d 810, 813 (1st Cir.1975) (failure to plead an affirmative defense results in its waiver and exclusion from the case). And, the miscues of one defendant often frustrate the stratagems of a codefendant; that is an occupational hazard of multi-party litigation.

Where, as here, one defendant has forfeited the right to remove, that waiver, in effect, binds all subsequently named defendants. *See Fletcher v. Hamlet,* 116 U.S. 408, 410, 6 S.Ct. 426, 427, 29 L.Ed. 679 (1886) (when one of several defendants in suit on joint cause of action in state court loses his right to remove by failing to make timely application, right of removal is lost for all). *See also Crocker v. A.B. Chance Co.,* 270 F.Supp. 618. (S.D.Fla.1967) (belated addition of party defendant does not alter fact that original defendant had affirmatively waived its right to remove prior to the time of the amended complaint); *Fugard v. Thierry,* 265 F.Supp. 743, 745 (N.D. Ill.) (same). That is the case at bar.

■ The court recognizes that, as in other closed window cases, there is some theoretical danger that a crafty plaintiff may sue only a single defendant, choosing one who the plaintiff believes will forfeit an opportunity to remove; and thereafter, once the window is shut, attempt to add removal-prone defendants. Passing the fact that such gamesmanship seems to call

for so highpowered a crystal ball that its implementation becomes farfetched, the Court's decision in *Fletcher*, 116 U.S. at 410, 6 S.Ct. at 427, strongly suggests that motive is beyond the pale of judicial inquiry in these circumstances. In the case before the court, however, it is unnecessary to confront this question squarely. Abbott is a sophisticated litigant, and Gorman had no reason to believe that Abbott was or was not more or less partial to a federal forum. Abbott plainly possessed the savvy and the wherewithal to file for removal if it perceived such a tactic to be in its self interest. The plaintiff in no way lulled Abbott into a false sense of security. And, Gorman's afterthought decision to add other parties defendant was a consequence not of some preconceived Machiavellian scheme, but of product identification problems raised by Abbott in the course of pretrial discovery. The defendants have neither argued nor suggested that Gorman's counsel timed the joinder of parties in an effort to insure adherence to her choice of forum. Inasmuch as there is no basis for a claim of corrupt motive in this case, the court need not determine whether sharp practice can ever sink to such levels as to warrant departure from the normal rules governing closed window removal petitions.[6]

When a motion to remand is timely filed, the burden of persuasion rests with the removing party to show that the action was duly removed. *Woods v. Firestone Tire & Rubber Co.*, 560 F.Supp. 588, 590 (S.D.Fla.1983); *Town of Freedom v. Muskogee Bridge Co.*, 466 F.Supp. 75, 77 (W.D. Okla.1978). Any substantial doubts as to the propriety of removal must be resolved against the proponents of a federal forum. *Id.* The district court, in a challenged case, may retain jurisdiction only where its authority to do so is clear. Any other holding would detract from principles of federalism, comity, and the sovereignty of the several states. *Cf. McCaffrey v. Wilson & Co.*, 10 F.2d 368, 369 (D.Mass.1926).

Merck and its codefendants have failed to carry the devoir of persuasion in this instance. The causes of action asserted in the amended complaint are nonseverable. Accordingly, removal can be effected only if that course of action was seasonably espoused by all eligible respondents. That hurdle proves insurmountable in this matter, for Abbott has long since forfeited its right of removal.[7] The initial question posed, *see ante* Part III, must be answered in the negative. And, such a negative answer is, in turn, fatal to the ensuing claim of removal jurisdiction. Therefore, Merck's attempt to preempt state court hegemony in this instance will not wash.

The court is aware that the result reached may seem harsh as to Merck, a party which acted as expeditiously as possible to preserve its perceived rights. Yet, no other outcome is tenable. Federal district courts are, after all, courts of limited jurisdiction and the statutes which limn the contours of that jurisdiction must be strictly observed. To forestall remand in this case would work an utter disregard for the requirements of 28 U.S.C. § 1446(b). There is no principled way that such a result can be countenanced. Congress, the latter-day version of Tecumseh's Great

---

**6.** It is readily apparent that no exceptions exist here to the general requirement of unanimity of defendants' petitions to remove. *See ante* at 1199–1200. And, though the filing of an amendment to a complaint gives rise to a new right of removal if the amendment so changes "the character of the litigation as to make it substantially a new suit begun that day," *Fletcher v. Hamlet*, 116 U.S. at 410, 6 S.Ct. at 427, that doctrine is not apposite in this case. The defendants have not argued that Gorman's amended complaint radically altered the gravamen of the suit, and a comparison of the original complaint with the amended complaint bears out that the family resemblance is unmistakable. Abbott is the key

to the removal riddle, and as to that defendant, it remains confronted with essentially the same claim which it faced all along.

**7.** Although some of the later-joined defendants may have likewise permitted the window of opportunity to close by their failure to join in the removal petition within thirty days next following service, *see ante* n. 3, the court need not dwell on these possible bevues. Abbott's neglect alone undermines the propriety of Merck's removal attempt. There is no principle of majority rule; the decision to remove must be unanimous.

Spirit, *see ante* n. 1, has not appointed this place in which to light the fires of Gorman's case, and the litigation cannot here remain.

This civil action has been improvidently removed. The plaintiff's motion to remand must be, and it hereby is, granted. The case is remanded to the Providence County Superior Court. The clerk of this court shall forthwith transmit a certified copy of this opinion and order to the clerk of the state court, *see* 28 U.S.C. § 1447(c), and shall otherwise take such action as may be necessary or desirable in order expeditiously to implement remand. The state superior court may thereupon proceed to hear and determine the suit.

## V. COSTS

The plaintiff has requested that she be awarded her costs in the premises. *See id.* To be sure, 28 U.S.C. § 1447(c) empowers the court to grant "just costs" where removal has improvidently been essayed. But, such an award is discretionary rather than mandatory. *Olsen v. Olsen,* 580 F.Supp. 1569, 1572 (N.D.Ind.1984); *Dunkin Donuts of America v. Family Enterprises, Inc.,* 381 F.Supp. 371, 373 (D.Md.1974). Federal courts have shown commendable restraint as to the assessment of such costs where the nonremovability of the case was not obvious, *Olsen,* 580 F.Supp. at 1572, where the removing defendant acted in good faith, *Zimmerman v. Conrail,* 550 F.Supp. 84, 87 (S.D.N.Y. 1982), or where a substantial jurisdictional question was posited, *Turner v. Bell Federal Savings and Loan Association,* 490 F.Supp. 104, 105 (N.D.Ill.1980). These rubrics fit the case at bar. There is no warrant in this record for penalizing Merck, which raised legitimate and substantial asseverations in the best of faith.[8] That portion of the motion to remand which seeks the imposition of costs is denied.

*It is so ordered.*

8. The balance is fairly calibrated, too, as plaintiff's counsel was of only marginal assistance to the court in the journey through this particular removal labyrinth.