**ADORNO ENTERPRISES, INC. and Dicini International, Inc., Plaintiffs,**

v.

**FEDERATED DEPARTMENT STORES, INC. d/b/a Bullock's Department Stores, Defendant.**

Civ. A. No. 83–0658–S.

United States District Court, D. Rhode Island.

March 19, 1986.

Tasca, Rotelli & Teverow, Joshua Teverow, Richard Tasca and Gary J. Berkowitz, Providence, R.I., for plaintiffs.

Hinckley, Allen, Silverstein & Tobin, Michael P. DiFanti, and Adler, Pollock & Sheehan, Robert D. Wieck, David J. Oliviera, Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

SELYA, District Judge.

This suit, in its current posture, presents an unusual question pertaining to the proper scope and extent of this court's removal jurisdiction. *See* 28 U.S.C. §§ 1441–1447. In order to place the inquiry into proper perspective, it is essential carefully to track the antecedents and history of the litigation.

## I. BACKGROUND

This case, like so many others, has its roots in anticipated commercial profit gone awry. The defendant, Federated Department Stores, Inc. (FDS), was the operator of a thriving mercantile chain known as Bullock's Department Stores (Bullock). FDS is a Delaware corporation having its principal place of business in Cincinnati, Ohio. Bullock is not separately chartered, but is run as a division of FDS.

In 1982, Bullock sought to arrange a consignment program for the supply of fine jewelry to its various stores. Although the mise-en-scene is less than explicit, it appears that these negotiations implicated both Dicini International, Inc. (Dicini) and Adorno Enterprises, Inc. (Adorno). Dicini, a Delaware corporation, maintained its main offices in New York. Adorno was incorporated under the laws of Rhode Island and was headquartered there. (The two were informally affiliated: Steven Iacono, Adorno's principal, was a half-owner of Dicini.)

A deal was struck. Whatever the details of the bargain may have been, it is clear that Adorno (either directly or through Dicini) began to furnish fine jewelry for Bullock's consignment promotion. It is equally clear that the program was a flop: Dicini went out of business and Adorno ceased supplying goods to Bullock. The failure of the program did not, however, end the matter.

## II. TRAVEL OF THE CASE

In October of 1984, Adorno sued FDS in the Rhode Island Superior Court for the County of Providence. In its complaint, Adorno charged that it had lost substantial sums by reason of breach of contract and fraud practiced by FDS. Within the period allotted by statute, 28 U.S.C. § 1446(b), the defendant removed the action to this court. Inasmuch as the parties were of diverse citizenship and the requisite amount was in controversy, *see* 28 U.S.C. § 1332(a), the removal was properly bottomed on the existence of diversity jurisdiction. *See* 28 U.S.C. § 1441(a) ("any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant...to the district court of the United States"). Adorno had no grounds upon which to seek remand, and did not do so.

On December 11, 1984, FDS filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6), and for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2). At the same time, the defendant filed an alternative motion for a more definite statement, Fed.R.Civ.P. 12(e), and also moved to transfer venue to the Central District of California pursuant to 28 U.S.C. § 1404(a). These motions were denied, some without prejudice. On April 23, 1985, a pretrial order was entered.

In the course of discovery, defendant made much of the fact that the supply agreement at issue was not entered into between Bullock and Adorno, but rather

between Bullock and Dicini. Adorno, eager to avoid the interposition of what it viewed as an essentially technical defense, sought to amend its complaint pursuant to Fed.R.Civ.P. 15; the gist of the amendment was to add Dicini as an additional party plaintiff. FDS did not object to the motion. The court granted the unopposed motion on December 13, 1985. *See* D.R.I.L.R. 12(a)(2). Accordingly, Adorno and Dicini, as co-plaintiffs, filed an amended complaint. The new pleading was substantially similar to the earlier complaint, except that it portrayed both Adorno and Dicini as real parties in interest who had been harmed by the defendant's supposed misbehavior. The amended complaint prayed for joint and/or several relief in favor of both plaintiffs.

FDS at that point renewed most of its earlier motions: it sought dismissal, arguing once again both the ostensible lack of personal jurisdiction and the absence of any actionable claim. And, the defendant likewise renewed its motion for a change of venue. The plaintiffs objected. Oral argument was set down to be heard on February 7, 1986.

During the course of these arguments, this court, sua sponte, raised the issue as to the propriety of its retention of the case in light of the changed circumstances. Inasmuch as FDS and Dicini shared a common state of incorporation, Delaware, they were nondiverse within the contemplation of § 1332(a), and the jurisdictional basis which had been the springboard for the original removal had to that extent been eroded. Once the court had raised the issue, the parties quickly adopted antagonistic positions: the plaintiffs urged remand of the action and the defendant adjured retention of the federal forum.

Briefs were requested and have now been received. This rescript comprises the court's findings and conclusions in the premises.

## III. THE ISSUE

This case was properly removed under 28 U.S.C. § 1441(a) at its inception (when Adorno and FDS were the sole adversaries before the court). That removal was predicated upon the underlying existence of diversity jurisdiction. In turn, complete diversity of citizenship between the parties was irredeemably shattered when Dicini became a player in the game. So, the umbilical question is whether this court, faced with Dicini's late-emerging presence on the scene, has an obligation to remand the action to the state court currently; or alternatively, whether this court possesses (and if so, should it exercise) discretionary power to implement such a remand.

## IV. DISCUSSION

### A.

■ It is appropriate to begin with an examination of the applicable statutory mosaic. The federal removal statutes internalize post-removal procedure in the federal court. *See* 28 U.S.C. § 1447. Specifically, § 1447(c) provides in pertinent part that:

If *at any time before final judgment* it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs. A certified copy of the order of remand shall be mailed by its clerk to the clerk of the State court....(emphasis added).

There is no doubt that the statute calls for continuing scrutiny of the removal of a case from a state tribunal; the district court's obligations in this respect are not terminated once the initial transfer has taken place. Moreover, the court's role under § 1447(c) is not designed to be passive; the law contemplates—indeed, demands—that the district judge act sua sponte where appropriate. *E.g., Martin v. Wilkes Barre Publishing Co.,* 567 F.Supp. 304, 306 (M.D. Pa.1983); *Home Health Services, Inc. v. Currie,* 531 F.Supp. 476, 477 (D.S.C.1982), *aff'd,* 706 F.2d 497 (4th Cir.1983); *Friddle v. Hardee's Food Systems, Inc.,* 534 F.Supp. 148, 149 (W.D.Ark.1981).

■ In the first instance, a strong "plain meaning" argument can be derived from the wording of § 1447(c) which would require remand of this action. Dicini and FDS share a common corporate birthplace.

Thus, there is no longer true diversity of citizenship in this case. Once § 1332(a) has become unavailable, no federal jurisdictional platform exists. The statute insists that the court remand "[i]f at any time before final judgment" the absence of jurisdiction becomes apparent. Nothing contained in § 1447(c) limits the requisite judicial analysis to the jurisdictional basis existing *at the time of removal.* Keeping in mind that the statutes conferring both diversity and removal jurisdiction are to be strictly construed, *see Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 377, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978) (diversity jurisdiction); *Irving Trust Co. v. Century Export and Import, S.A.,* 464 F.Supp. 1232, 1236 (S.D.N.Y.1979) (removal jurisdiction), there is excellent reason to believe that, on its face, § 1447(c) dictates remand if jurisdictional defects arise *after* removal.

Such a result is plainly indicated by the Eighth Circuit's holding in *Overman v. United States,* 563 F.2d 1287 (8th Cir.1977). There, a case had been removed under 28 U.S.C. § 1442(a)(1) because of the presence of a federal officer as a party defendant. When the claim against the federal officer was dismissed well after the removal had been perfected, the court of appeals (faced with the divestiture of the original jurisdictional predicate by reason of a post-removal development) held that the balance of the controversy should be remanded. *Id.* at 1292–93. *See also Murphy v. Kodz,* 351 F.2d 163, 167–68 (9th Cir.1965) (same). *Cf. Brough v. United Steelworkers of America, AFL–CIO,* 437 F.2d 748, 750 (1st Cir. 1971).

On the other hand, the posture in which the putative jurisdictional problem arises in the case at bar is highly idiosyncratic.[1] The court recognizes that its duty to hear cases which are properly before it is no less solemn than its duty to remand (or, in nonremoval situations, to dismiss) cases which lay no valid claim to the benefices of a federal forum. So, fairness demands that the exposition be carried beyond the apparent meaning of § 1447(c) to ascertain whether the compulsion which the plaintiffs discern in the present record truly exists.

In *Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), the Supreme Court extensively discussed the legislative history of 28 U.S.C. § 1447(c). *Id.* at 345–52, 96 S.Ct. at 590–593. (*Thermtron* involved the scope of appellate review of district court remand decisions pursuant to 28 U.S.C. § 1447(d); that explication necessitated surveying the legislative history of § 1447(c) as well.) The current version of the statutory grant of removal jurisdiction grew out of the Judiciary Act of 1875, 18 Stat. 472, and the Act of March 3, 1887, 24 Stat. 553. These earlier enactments evolved, first, into 28 U.S.C. §§ 80 and 71 (1946 ed.), and later (in 1948–49) ripened into 28 U.S.C. §§ 1447(c) and (d), respectively.

The text of 28 U.S.C. § 80 (1946 ed.) (now repealed) is set forth in the margin.[2] This version of the Act, which was effective until Congress implemented the 1948 revisions, explicitly provided that the district court was to remand the case whenever any jurisdictional defect became apparent. If at any point it appeared to the satisfaction of the court that the "suit does not

---

1. *Overman,* it can be argued, is a different breed of cat, because there the "post-removal development" was the departure of an original party. Here, the continued integrity of removal depends upon the subsequent entrance of an additional party.

2. 28 U.S.C. § 80 (1946 ed.) (now repealed) intoned:

   If in any suit commenced in a district court, or removed from a State court to a district court of the United States it shall appear to the satisfaction of the said district court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said district court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this chapter, the said district court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require, and shall make such order as to costs as shall be just.

really and substantially involve a dispute or controversy properly within [its] jurisdiction," the court was ordained to "dismiss the suit or remand it. ..." *Id.* Section 1447(c) is, to be sure, less specific in terms of the precise timing sequence concerning the discovery of the jurisdictional defect vis-a-vis the time at which the defect arises; but, the modern statute is a lineal descendant of § 80 and should be read with the gloss of that inheritance. As the Court has noted: "The plain intent of Congress, ...was to recodify the pre-1948 law without material change insofar as the provisions of §§ 71 and 80 of the old Code here relevant were concerned. ..." *Thermtron,* 423 U.S. at 350–51 n. 15, 96 S.Ct. at 592–93 n. 15. Viewed in this light, it is apparent that the language "removed improvidently," 28 U.S.C. § 1447(c), refers to a condition of improvidence existing at any time, before or after removal.

This court, in reading *Thermtron* in such a manner, blazes no new trials. Essentially the same approach has been adopted by at least two other district courts. *See Soam Corp. v. Trane Co.,* 506 F.Supp. 302, 307–308 (S.D.N.Y.1980); *Stanhope v. Ford Motor Credit Co.,* 483 F.Supp. 275, 278–79 (W.D.Ark.1980). *But see Skinner v. American Oil Co.,* 470 F.Supp. 229, 234 (S.D. Iowa 1979) (court should "look solely at the pleadings as they existed at the time of removal"). With respect, this court finds the limited horizons mapped by *Skinner* to be unpersuasive. The better-reasoned view of the legislative history fully supports the "plain meaning" thesis advanced above.

FDS argues, as one would expect, that it will be unfairly prejudiced if the court permits post-removal alterations in the legal landscape to erode its claim to a federal forum. FDS overlooks, however, that fed-

eral jurisdiction cannot be predicated on squatter's rights alone. And, the defendant's jeremiad is undermined by the utter absence of any unwarranted prejudice in the circumstances at bar.

It must be remembered that the loss of complete diversity in this case arose from the amendment of the complaint adding Dicini as a party plaintiff. The Supreme Court has held that Fed.R.Civ.P. 15 was designed to "facilitate the amendment of pleadings except where prejudice to the opposing party would result." *United States v. Hougham,* 364 U.S. 310, 316, 81 S.Ct. 13, 18, 5 L.Ed.2d 8 (1961). If FDS, which knew or should have known of Dicini's nondiverse citizenship,[3] had felt endangered by potential prejudice stemming from the amendment, it had a plain duty to object to the addition of Dicini as a party plaintiff. FDS eschewed that course. The motion was therefore deemed to be unopposed, D.R.I.L.R. 12(a)(2), and was granted on that basis on December 6, 1985. Thus, Dicini's emergence on the scene bore, in this sense, the defendant's imprimatur.

Given this backdrop, it comes with peculiar ill grace for FDS now to complain that it is being treated unfairly because Dicini's joinder has triggered the dissipation of federal jurisdiction. Though this court would have accorded careful consideration to an objection to the amendment based on the argument that Dicini's joinder was unwarranted because it would destroy the court's subject matter jurisdiction, *cf. Skinner,* 470 F.Supp. at 234; Fed.R.Civ.P. 19(a), FDS, by failing to object to the amendment, effectively waived any entitlement to such consideration. Moreover, inasmuch as Rule 15 normally operates on a "relation back" principle,[4] a cogent argument can be made that, in the afterlight cast by the

---

3. The motion to amend was filed on November 6, 1985. The motion papers which were served upon defense counsel contained a copy of the proposed amended complaint. The latter document plainly identified both Dicini and FDS as Delaware corporations. *Id.* at ¶¶ 2, 3. Forewarned should have been forearmed. *Cf.* M. de Cervantes, *Don Quixote de la Mancha* 502 (Motteux trans. 1703).

4. *See* Fed.R.Civ.P. 15(c): "Whenever the claim. . .asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." It is beyond cavil in this instance that the plaintiffs' amended complaint grew out of, and solicited redress for, the identical conduct and transactions limned in the initial complaint.

amendment adding Dicini, subject matter jurisdiction was improperly premised from the start. At least one district court has so found. *See Soam Corp.*, 506 F.Supp. at 308 (amendment treated as part of original complaint pursuant to Fed.R.Civ.P. 15(c); as a result, case held improvidently removed because diversity jurisdiction lost prior to final judgment). Such a holding does more than buttress this court's "plain meaning" analysis; if adopted, it ends the inquiry entirely. And, this court believes that *Soam* is good law.

It should perhaps be noted at this juncture that this case, patently, is not one in which a plaintiff acted purposefully with a view toward ousting the court of jurisdiction. To the contrary, there is not a scintilla of evidence to indicate that, in formulating the amendment to its complaint, Adorno intended to destroy diversity. Nor has FDS suggested that such was the case. A brief explication is helpful.

Adorno and Dicini were, as mentioned above, affiliated concerns. They apparently viewed Adorno as the proper party plaintiff, and suit was brought accordingly. During discovery, it was FDS which raised the spectre of Adorno's standing to sue. Even at this late date, FDS continues to adopt that position. *See, e.g.*, Memorandum in Support of Defendant's Motion to Dismiss Plaintiffs' Amended Complaint at 3 ("Bullock's specifically denies that it had any contractual relationship with Adorno. Its arrangements were with Dicini.") And, FDS has acknowledged that Adorno filed the amended complaint "as a consequence of [deposition] testimony" supporting this line of defense. *Id.* Moreover, the plaintiffs were apparently unaware that the amendment would furnish a basis for remand.[5] They did not affirmatively seek that anodyne in the first instance. Rather, the court, sua sponte, raised the question upon perusal of the pleadings. Certainly, the plaintiffs seized upon the issue when the court brought it to the surface—but there is no basis for a contention that they contrived to inject the issue into the case.

The absence of ulterior motivation is not without significance. *See Stanhope*, 483 F.Supp. at 278 (in absence of evidence that plaintiff sought to divest court of jurisdiction, remand of case warranted following plaintiff's joinder of nondiverse party). Thus, the long-settled (and salutary) policy that a plaintiff cannot artificially force a retreat to the first (state) forum by embarking purposefully on post-removal steps designed exclusively to foster remand, *see generally St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 292–93, 58 S.Ct. 586, 591–92, 82 L.Ed. 845 (1938); *Swafford v. Transit Casualty Co.*, 486 F.Supp. 175, 176–77 (N.D.Ga.1980); *Corcoran v. Pan American World Airways, Inc.*, 194 F.Supp. 840, 841 (D.Mass.1961), is not implicated in the circumstances at bar. *Cf. American Mutual Liability Insurance Co. v. Campbell Lumber Manufacturing Corp.*, 329 F.Supp. 1283, 1285–86 (N.D.Ga. 1971) (good faith error on part of plaintiff, who had mistakenly overstated amount in controversy, nevertheless despoiled federal diversity jurisdiction when ultimately discovered). *Red Cab* cannot be read so mechanistically as to require blind allegiance to a principle that, once removal jurisdiction has attached, it cannot be defeated by any ensuing event.

■ In a further effort to deter the force of the plain meaning of the statute, FDS asserts an estoppel-type argument. Dicini voluntarily entered the federal court, this proposition runs, and it should not now be heard to complain of such a forum. This asseveration sidesteps the central point: subject matter jurisdiction either exists or it does not. And if the latter, then it cannot be conferred by estoppel any more than it can be conferred by the consent of the parties. *See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982); *California v. La-Rue*, 409 U.S. 109, 112 n. 3, 93 S.Ct. 390, 394 n. 3, 34 L.Ed.2d 342 (1972), *reh'g de-*

---

5. This is not to say that the plaintiffs should not have known. The tea leaves were there to be read for Adorno and for Dicini, as for FDS. *See*

*ante* n. 3. It is a familiar—if informal—precept of equity that what is sauce for the defendant's goose is likewise sauce for the plaintiffs' gander.

*nied,* 410 U.S. 948, 93 S.Ct. 1351, 35 L.Ed.2d 615 (1973); *Duffy v. Quattrocchi,* 576 F.Supp. 336, 341 (D.R.I.1983).

To sum up to this point, the court, in considering the need to remand, must take into account not only the accoutrements of the action at the time of removal, but the present posture of the case. The plain meaning of 28 U.S.C. § 1447(c) requires no less. And, on the face of this record, such an inquiry reveals that the complete diversity of citizenship which 28 U.S.C. § 1332(a) necessitates has been ravaged by the Delaware connection, that is, the shared state of incorporation of Dicini and FDS, respectively. That absence of diversity, in turn, strips this court of subject matter jurisdiction and, without more, directs that the suit be remanded to the state court.

### B.

The defendant argues, however, that there is more. It offers a trio of contentions in support of the thesis that, even when the litigation is viewed from a current perspective, remand is not obligatory. The court will examine each of these points below.

The defendant first urges that the parties be realigned, and contends that when properly so realigned, the ravelled sleave of diversity is reknit into a cohesive whole. That argument need not long detain the court.

To be sure, in weighing the appropriateness of a remand, the court should not hesitate to realign parties "realistically," to reflect their actual interest. *U.S. Fidelity & Guaranty Co. v. White,* 356 F.2d 746, 748 (1st Cir.1966). Yet, Dicini and Adorno are, to all intents and purposes, two peas in a communal pod; they appear "realistically" to belong on the same side of the case. Not only are they affiliated by a substantial degree of common ownership, but their interests vis-a-vis Bullock's consignment program are strikingly similar. In *White,*

the seemingly nondiverse defendant possessed interests identical with those of the plaintiff. *Id.* at 748. As the First Circuit phrased it, he did not "belong on the defendant's side of the fence." *Id.* To the contrary, all of the indications in this record illustrate that Dicini would be distinctly uncomfortable "on the defendant's side of the fence." Tossing empty rhetoric aside, FDS offers no meaningful support for the conclusory proposition that the parties should be rearranged. Dicini does "belong" in tandem with Adorno.

FDS's attempt to realign Dicini as a third-party defendant is equally disingenuous. Although it is possible rationally to question whether Adorno or Dicini (or both) is the "owner" of the chose in action against FDS, there is nothing to suggest that the defendant has an action over against either of these entities. More to the point, there is no proscription against either/or co-plaintiffs in the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 8(a) ("Relief in the alternative or of several different types may be demanded."); Fed. R.Civ.P. 20(a) ("All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any questions of law or fact common to all these persons will arise in the action."). The defendant raised the defense which invited the joinder, and failed to object to the arrangement at the time it was initially proposed. Realignment, in these circumstances, is but a misplaced flight of fancy.

■ FDS next argues that removal jurisdiction is also sustainable, notwithstanding the absence of complete diversity, pursuant to 28 U.S.C. § 1441(c).[6] The burden is on the defendant, however, to show that § 1441(c) applies, that is, that the claims of Adorno and Dicini are sufficiently separate

---

**6.** Section 1441(c) reads as follows:
Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of

action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

and independent. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). FDS has entirely failed to carry this burden. In point of fact, all indications are to the contrary: Adorno and Dicini joined forces, at least to some extent, to strike the bargain with FDS, and their claims seem inextricably bound up, one with the other. Where there is a single wrong arising from an interlocked series of transactions there is no separate and independent claim or cause of action under § 1441(c). *American Fire and Casualty Co. v. Finn*, 341 U.S. 6, 14, 71 S.Ct. 534, 540, 95 L.Ed. 702 (1951). As the Court announced long ago: "A defendant has no right to say that an action shall be several which a plaintiff elects to make joint. A separate·defence may defeat a joint recovery, but it cannot deprive a plaintiff of his right to prosecute his own suit to final determination in his own way." *Chicago, Rock Island and Pacific Railway Co. v. Martin*, 178 U.S. 245, 248, 20 S.Ct. 854, 855, 44 L.Ed. 1055 (1900), quoting *Torrence v. Shedd*, 144 U.S. 527, 530, 12 S.Ct. 726, 727, 36 L.Ed. 528 (1892).

The defendant's final point is its most compelling. There is some respectable caselaw which holds that only indispensable nondiverse parties added after removal may depreciate diversity jurisdiction. *See, e.g., Kaib v. Pennzoil Co.*, 545 F.Supp. 1267, 1269 (W.D.Pa.1982) (addition of nondiverse defendants does not divest court of original jurisdiction and compel remand, unless they are indispensable parties); *cf. Nursefinders of Elmwood Park, Inc. v. Metropolitan Life Insurance Co.*, 109 F.R.D. 4 (N.D.Ill.1985) (nondiverse indispensable party, though originally not joined, destroys diversity; action remanded); *Lamar Haddox Contractor, Inc. v. Potashnick*, 552 F.Supp. 11, 14 (M.D.La. 1982) (subsequent joinder of indispensable party requires that action be remanded to state court); *South Panola Consolidated School District v. O'Bryan*, 434 F.Supp. 750, 754 (N.D.Miss.1977) (same). This line of precedent is, however, distinguishable. As noted earlier, *see ante* at 1570, courts have justifiably been concerned that plaintiffs may seek intentionally to wreck federal jurisdiction by adding nondiverse parties for that purpose alone. *See also Boyd v. Diebold, Inc.*, 97 F.R.D. 720, 723 (E.D.Mich.1983). In theory, one way to guard against such incursions is to take the power to add artificial parties out of the plaintiff's hands. A litigant cannot "create" an indispensable party at will. If one exists, it belongs in the case, should have been in the case from the beginning, and rightfully undermines jurisdiction when it belatedly enters the fray. ("Nominal" or even "proper" parties are, of course, much easier for a scheming plaintiff to come by.) So, at the bottom line, those courts which have limited the sweep of their jurisdictional radar to subsequently-added indispensable parties have done so in an effort to generate reliable assurances that no improper motive can be attributed to the plaintiff when he sponsors joinder.

In the case at bar, it is unnecessary squarely to confront the uncertain question of whether the limitation to indispensable parties is a tenable one, or to decide whether or not Dicini is indispensable. Clearly, Dicini is at the least a proper party plaintiff; it has a legitimate stake in the outcome and its rights can in no reasoned way be characterized as nominal or as purely formal. The court has every assurance here that Adorno did not act out of any infelicitous motive. *See ante* at 1570. Thus, whether Dicini is characterized as an indispensable or proper party is beside the point. That fine distinction, even if drawn, would not assist the court— as the answer to the question which the distinction ultimately addresses is otherwise self-evident. *See Desert Empire Bank v. Insurance Co. of North America*, 623 F.2d 1371, 1375–76 (9th Cir.1980) (in removal case in which the addition of a new defendant will destroy diversity jurisdiction and require remand to state court, trial court should look with particular care at plaintiff's motive in seeking to join additional party); *Shaw v. Munford*, 526 F.Supp. 1209, 1214 (S.D.N.Y.1981) (where no showing that plaintiff seeks to join additional defendants solely to effectuate remand, court may exercise discretion and

permit new parties to be added, even though diversity ruined).

■ In any event, this court believes that the rule that added indispensable parties, and only indispensable parties, defeat subject matter jurisdiction is overly simplistic.[7] It is beyond doubt that the emergence of an indispensable party, if nondiverse, should defeat subject matter (diversity) jurisdiction and require remand. *Lamar Haddox Contractor*, 552 F.Supp. at 14. Conversely, nominal or formal parties or defendants fraudulently joined should not. *Woods v. Firestone Tire & Rubber Co.*, 560 F.Supp. 588, 590 (S.D.Fla.1983); *McKinney v. Rodney C. Hunt Co.*, 464 F.Supp. 59, 62 (W.D.N.C.1978).

The middle class—proper parties—cannot be lumped at either end of this spectrum. Proper parties should not be added blindly without any concern for their jurisdictional repercussions. Rather than examining the impact upon jurisdiction after the fact, it is far preferable to weigh this point coincident with the proposed joinder. *Cf.* Fed.R.Civ.P. 19(a). When such a proffer is made, the court should look to motive, among other things, to determine if an intent to usurp jurisdiction underlies the effort. *See Desert Empire Bank v. Ins. Co. of North America*, 623 F.2d at 1375–76 (examining plaintiff's motive in seeking to join additional proper party). *Cf. Shaw v. Munford*, 526 F.Supp. at 1214 (examining motive of plaintiff in seeking to join additional party). In this case FDS, by eschewing any objection to the motion to amend, forfeited any right to such consideration. Moreover, viewed in hindsight, these plaintiffs pass the motive test with flying colors. And, Dicini has shown good reason legitimately to claim a place in the litigation.

## V. CONCLUSION

■ The burden of persuasion rests with the removing party to show that the action was duly removed. *Woods*, 560 F.Supp. at 590; *Town of Freedom v. Muskogee Bridge Co.*, 466 F.Supp. 75, 77 (W.D. Okl.1978). Any substantial doubts as to the propriety of removal must be resolved against the proponent of a federal forum. *Id.* "The district court, in a challenged [removal] case, may retain jurisdiction only where its authority to do so is clear." *Gorman v. Abbott Laboratories*, 629 F.Supp. 1196, 1203 (D.R.I.1986). Put another way, "[t]he right of removal being in derogation of state sovereignty, the act granting it ought not to be enlarged beyond what is 'definite and free from ambiguity.'" *McCaffrey v. Wilson & Co.*, 10 F.2d 368, 369 (D.Mass.1926), quoting *Lee v. Chesapeake & Ohio Railway Co.*, 260 U.S. 653, 660, 43 S.Ct. 230, 232, 67 L.Ed. 443 (1923).

■ FDS has not carried the devoir of persuasion in this instance. As matters now stand, there is no complete diversity of citizenship, and no other colorable basis for federal jurisdiction. The causes of action asserted in the amended complaint are non-severable. These wounds (to some extent self-inflicted) cannot, as the defendant believes, be healed by the slapdash application of a gauzy bandaid. FDS's attempt to continue to preempt the state court's jurisdiction over this matter cannot at this point be countenanced. Federal district courts are, after all, courts of limited jurisdiction. *Gorman, supra.*

The civil action has been improvidently removed within the meaning and intendment of 28 U.S.C. § 1447(c). Thus, this court has an unflagging obligation to return the litigation from whence it came.[8] The plaintiff's motion to remand must be,

---

7. If this thesis was carried to its logical extreme, a proper party which was an original suitor in a multi-plaintiff action could be ignored for *all* § 1332(a) jurisdictional purposes, including removal—and this is plainly not the law. *Schuckman v. Rubenstein*, 164 F.2d 952, 956 (6th Cir. 1947) *cert. denied*, 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151 (1948) (citizenship of proper parties

must be taken into account for diversity purposes if joined, even though they are not indispensable parties).

8. The conclusion that the court is duty-bound to remand obviates any need to examine the advisability of remand as a matter of discretion.

and it hereby is, granted. The case is remanded to the Providence County Superior Court. The clerk of this court shall forthwith transmit a certified copy of this memorandum and order to the clerk of the state court, *see* 28 U.S.C. § 1447(c), and shall otherwise take such action as may be necessary or desirable in order expeditiously to implement remand. The state superior court may thereupon proceed to hear and determine the suit. No costs to any party.

*So ordered.*