ESTATE OF Artie D. REMLEY,
Deceased, et al.[1], Plaintiffs,

v.

AMOCO PRODUCTION COMPANY,
Defendant.

Civ. A. No. G–82–102.

United States District Court,
S.D. Texas,
Galveston Division.

Dec. 21, 1983.

---

1. The petition for removal in this case is styled "*James Milton Alexander, et al, v. Amoco.*" Upon removal the parties began styling documents "*Estate of Artie D. Remley, Deceased, et al, v. Amoco.*" Prior related litigation in state court was styled "*Alexander v. Amoco.*" In order to reduce confusion between the two cases and to maintain uniformity within this Court's file, the Court will hereinafter style documents within this case as "*Estate of Artie D. Remley, Deceased, et al, v. Amoco.*"

Charles L. Black, Aycock, Holland, Abernathy, Tindall & Aycock, Houston, Tex., for plaintiffs.

Frank L. Heard, Jr., Vinson & Elkins, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

HUGH GIBSON, District Judge.

BEFORE THE COURT is plaintiffs' motion for class certification and defendant's opposition thereto. The parties appeared in a hearing before the Court August 8–10, 1983, to present evidence on the motion.

Plaintiffs are owners of royalty and overriding royalty interests in the mineral estates within an area known as the West Hastings field. Approximately 600 named plaintiffs have joined in this action representing claims of some 66 leaseholds. Defendant Amoco is the predominate operator of mineral recovery in the field, working approximately 80% of the leaseholds and is the owner of the working interest of plaintiffs' mineral estates. The royalty owners before the Court constitute a subpart of the royalty owners in the West Hastings field. Plaintiffs claim that their individual mineral interests were systematically drained by Amoco's operation of the field as a unit. Plaintiffs claim that their estates are downdip and that their minerals were drained and recovered on the updip estates; they urge the Court to certify the group as a class for the prosecution of their actions.

Amoco opposes plaintiffs' motion for class certification and presented evidence to show that each plaintiff's interest was competing and in conflict with other members of the group; each plaintiff's factual basis for recovery, because of the field's numerous strata and faults, would be distinct; and that the group was not represented adequately. Under Rule 23(a), Fed.R. Civ.P., a class action is maintainable only if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.* The primary issues before the Court are whether the claims of each of the 66 leaseholds are adverse and thereby conflicting and whether each cause of action presents common questions of fact.

■ Plaintiffs brought this cause of action to recover for Amoco's alleged breach of the lease. Under an oil and gas lease a lessee has a "general duty ... to conduct operations as a reasonably prudent operator would on that particular lease in order to carry out the purpose of the lease in question." *United States Steel Corp. v. Whitley,* 636 S.W.2d 465, 471 (Tex.Civ.App.— Corpus Christi 1982), citing, *Amoco Production Company v. Alexander,* 622 S.W.2d 563 (Tex.1981). Each oil and gas lease contains implied covenants of performance to protect the lessor from local and field-wide drainage. *Amoco Production Co. v. Alexander, supra* at 567. Specifically, an operator covenants to develop each lease; to drill and reasonably develop the lease after production has been achieved; and to manage and administer the lease by producing and marketing the minerals, operating with reasonable care, using successful modern methods of production, and seeking favorable administrative action. R. Hemingway, The Law of Oil and Gas § 8.1 (1971).

■ In the *Alexander* case, *supra,* the State Supreme Court discusses field-wide drainage and the particular characteristics

of the West Hastings field.[2] The Court found that the West Hastings field was a non-horizontal water-drive field, and that the mineral reservoir was the closest to the surface in the southeast (updip) and lowest in the northwest (downdip).[3] The state Court concluded that a lessee has a duty as a reasonably prudent operator to take action to protect against field-wide drainage if "an amount of oil can be recovered to equal the cost of administrative expenses, drilling or reworking and equipping a protection well, producing and marketing the oil, and yield to the lessee a reasonable expectation of profit." *Id.* at 568, citing, *Clifton v. Koontz,* 160 Tex. 82, 96–97, 325 S.W.2d 684, 695–96 (1959). In order to recover for field-wide drainage, a lessor must show substantial drainage of his interest and that a reasonably prudent operator would have acted to prevent substantial drainage under the same or similar circumstances. *Alexander, supra* at 568.

In the case at bar, Amoco owed a duty to each of the 66 lessors to act as a prudent operator. Each lessor was entitled under the implied covenants of the lease to be protected from substantial drainage as limited by the measure of reasonable profitability.

Defendant presented evidence at trial that while the field is a single reservoir, each leasehold has distinct sands and is subject to different faults and strata. Each lease may be uniquely characterized by these qualities. The value and recoverability of minerals underlying each depends upon the porosity of the sand, permeability of the geology, the well pressure, and pricing of the extracted mineral.

Each lease, because of these unique qualities, drains in a different manner and at a different rate. The burden of each plaintiff at trial will be to show how his lease was substantially drained and the reasonable profitability of protective drilling on that particular lease. In short, while plaintiffs may show that Amoco systematically drained the field, each must still prove his individual injury.

The Court therefore concludes that no supreme common question of fact exists amongst the plaintiffs. The Court notes that because of the question of systematic drainage, these actions may be properly joined for purposes of pretrial discovery of that issue to expedite discovery and allow plaintiffs to share pretrial expenses.

The Court further concludes that the interest of each of the leases is conflicting. Amoco did not have a collective duty to all of the lessors in the field to prevent field-wide drainage, but owed the duty to each leasehold individually.

---

**2.** Plaintiff in *Alexander v. Amoco* was a downdip royalty owner in the West Hastings field. The case was one of first impression on the issue of whether a lessee has a duty to protect a lessor from field-wide drainage.

**3.** A water-driven field is one in which the reservoir is composed of oil and water

[B]ecause water is heavier than oil, the water moves to the bottom of the reservoir driving the oil upward. As oil is removed, water moves to fill the space.

As the oil is produced, the oil-water contact (a measure of the reservoir water level) gradually rises until the wells begin to produce water along with oil. As the wells are produced, the fluid from the wells contains increasingly higher percentages of water. When the well produce almost all water, the wells are abandoned. The wells are then said to be 'watered out' or 'flooded out.' . . .

In water-drive fields, such as the Hastings, West Field, natural underground conditions and production of oil updip work to the disadvantage of downdip leases. As the oil is produced, the oil-water contact rises. The greater the production from updip leases, the sooner the wells on downdip leases will be 'watered out' because of the water-drive pushing the oil to the highest part of the reservoir. The downdip leases, therefore, are the first to water out. Moreover, production anywhere in the field will cause the oil-water contact to rise and move from the downdip leases to the updip leases. This is field-wide drainage.

*Id.* at 565–566. Most of Amoco's competitors in the field hold downdip leases. The Court in *Alexander* noted that Amoco, as a common lessee in the field, has no economic incentive to invest downdip, as downdip oil will eventually be recovered updip, and the greater updip production, the sooner Amoco's competitors (in the downdip) will be watered out. *Id.* at 569.

The *Alexander* court pointed out that in field-wide drainage cases an operator's responsibilities to other lessors in the same field do not control. Each lessor's suit arises and is bounded by the lease agreement. The reasonably prudent operator standard is not reduced or enhanced because Amoco is a common lessor. *Id.*

 In evaluating liability and damages, the Court will look to evidence of the potential production and profitability of each lease if operated within the standard of a reasonably prudent operator. Since the reservoir constitutes a finite resource, each claimant would be competing to show what share he could recover. This inherent conflict among the plaintiffs would defeat the purpose of forming the class and would pose an ethical conflict to counsel of record. This problem is particularly prominent since it is anticipated that at least some of the plaintiffs may have difficulty in showing the profitability of protection wells.

For the reasons discussed above, the Court does not foresee a danger that prosecution of the separate claims will yield inconsistent adjudications or that individual adjudications will be dispositive of the interests of other lessors. See Rule 23(b), Fed.R.Civ.P. In fact, it is because each plaintiff's potential recovery is not based on a common element and each recovery, or lack thereof, will vary with the unique quality of each lease property, that a class action is not the superior method for the fair and efficient adjudication of this controversy. See Rule 23(b)(3), Fed.R.Civ.P.

Plaintiffs have urged that it may not be economically feasible for each lessor to pursue his action if the class is not certified. Plaintiffs have also pointed out that if not pursued as a class action, the alleged conversion, because of its limited economic effect to each plaintiff, may escape prosecution. Given the state of the law and the burden of each plaintiff to show drainage and the profitability of protection wells, the Court is without cure for this apparent inequity. The duty of Amoco is to each lessor and not to the field as a whole.

Accordingly, it is ORDERED, ADJUDGED and DECREED that plaintiffs' motion for class certification is DENIED.