**STEEL VALLEY AUTHORITY, Appellant,**

v.

**UNION SWITCH AND SIGNAL DIVISION, American Standard, Inc., Westinghouse Air Brake Division, American Standard, Inc.; Radice Corporation; F. Emmett Meyer, Jr.; Louis D. Kopsa Radice-East Hills, Inc., Appellees.**

No. 86–3402.

United States Court of Appeals, Third Circuit.

Argued Nov. 7, 1986.

Decided Jan. 20, 1987.

Rehearing and Rehearing In Banc Denied Feb. 11, 1987.

Joseph S. Hornack (argued), Edward Jaffee Abes & Associates, P.C., Pittsburgh, Pa., for appellant.

Robert W. Hartland (argued), Reed, Smith, Shaw and McClay, Pittsburgh, Pa., for appellees—American Standard, Inc., Louis D. Kopsa and F. Emmett Meyer, Jr.

Robert W. Murdoch (argued), Vincent J. Grogan, Grogan, Graffam, McGinley & Lucchino, P.C., Pittsburgh, Pa., for appellee—Radice-East Hills, Inc.

Before SLOVITER, STAPLETON and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

The Steel Valley Authority (Steel Valley) has appealed from an order of the district court dismissing Steel Valley's complaint against various named defendants for failure to state a cause of action. We do not reach the question of whether Steel Valley stated a viable cause of action because we have determined that the addition of an indispensable, nondiverse party defendant to Steel Valley's action deprived the district court of federal subject matter jurisdiction.

### I.

The circumstances giving rise to this case, the migration of heavy industry from long-dependent Pennsylvania communities to new locations outside Pennsylvania, have become all too familiar in the industrial areas of that state. The players in this economic drama are by no means unique. The main defendant in this case is American Standard Corporation, the parent company of both Westinghouse Air Brake Division (WABCO), located in Wilmerding, Pennsylvania since 1889, and Union Switch and Signal Division, located in Swissvale, Pennsylvania since 1887. The plaintiff in this case is the Steel Valley Authority, an organization formed by nine Allegheny County municipalities for the purpose of, among other things, promoting industrial

development projects, both new and existing.

The dispute between the parties developed after American Standard's announcement in the latter part of 1985 that it would close down all of the Union Switch plant and most of the WABCO plant by the end of 1987. Not surprisingly, the decision was unpopular in the communities to be affected by the closings. Reaction was particularly bitter because of extensive community efforts over the past twenty years to keep the plants open.

In an effort to salvage the 2,000 jobs which would be lost as a result of this corporate migration, Steel Valley began to formulate a plan to acquire and operate the WABCO and Union Switch plants and properties as industrial development projects. Apparently, during this initial planning period, American Standard threatened the removal of various equipment and fixtures necessary to the successful operation of the plants.

Forced to take action to preserve the feasibility of its project, Steel Valley brought an action on March 24, 1986 in the Court of Common Pleas of Allegheny County, Pennsylvania against the Union Switch and Signal Division; Westinghouse Air Brake; Louis Kopsa and F. Emmett Meyer, Jr., both employees of the American Standard subsidiaries; and Radice Corporation, a Florida corporation.[1] Steel Valley's goal in the filing of this action was to preserve the plants in their operable form until it could formulate and implement a plan for the acquisition of the plants through an exercise of its eminent domain power.

In its complaint, Steel Valley alleged that American Standard's removal of specialized machinery and equipment from the property constituted waste; it therefore sought an injunction prohibiting such waste of the property. Steel Valley argued that it was entitled to an injunction against waste of the property at issue because of its rever-

---

1. At the time of the filing of the original complaint, Steel Valley alleged that Radice Corpora- tion was the record owner of the Union Switch real estate.

sionary interest in the land arising out of its power of eminent domain. Steel Valley also alleged the need to preserve the *status quo* until it could formulate its plan of acquisition and development, asserting that its prospective taking would be mooted by the "destruction of the underlying *res.*" App. at 73a. It therefore sought, among other relief, an injunction against the destruction or razing of the buildings or fixtures forming part of the real estate. Affirmatively, it sought the protection and maintenance of the property until it could file a declaration of taking.

On March 25, 1986, American Standard filed a petition for removal in the District Court for the Western District of Pennsylvania alleging the jurisdictional ground of diversity. No hearing had yet been held in state court on the preliminary injunction sought by Steel Valley.

American Standard alleged in its petition for removal that the nondiverse individuals Meyer and Kopsa were "fraudulently and improperly joined" as defendants to Steel Valley's action in an effort by Steel Valley to prevent removal of its case to federal court. App. at 25a. Moreover, American Standard asserted that Radice Corporation, a Florida corporation, which *was* a diverse defendant, was merely a "nominal party" to the action, because Steel Valley had alleged no wrongdoing by Radice, and thus had not stated any cause of action against Radice to support its claims of relief. *Id.*

The district court granted American Standard's petition for removal on March 25, 1986, implicitly agreeing with American Standard's assertion that Meyer and Kopsa were fraudulently joined and that Radice Corp. was a nominal party, and therefore need not be considered in satisfying diversity jurisdiction requirements.[2]

Steel Valley filed an "Emergency" Motion to Remand on March 26, 1986. The following day, Steel Valley, claiming that it had been mistaken as to the identity of the record owner of the Union Switch property, amended its complaint as of right under Rule 15(a)[3], substituting *Radice-East Hills, Inc.* (Radice-East), a Pennsylvania corporation, for *Radice Corporation.* Radice-East had been the record owner of the Union Switch site since November 4, 1985 when Radice Corporation, the original defendant, assigned its interest in the property to Radice-East. Steel Valley's amended complaint asserted that Radice-East was the owner of the land and buildings occupied by Union Switch, and, among other relief specified, Steel Valley sought to enjoin Radice-East to maintain the property and buildings in their present condition.

Steel Valley argued at the district court hearing on the motion to remand that Radice-East was an indispensable party to the action and therefore, because the addition of Radice-East, a Pennsylvania corporation, destroyed diversity, the motion to remand to the state court should have been granted. In an order filed April 11, 1986, the district court rejected this argument and denied the motion to remand, holding that Radice-East also had been fraudulently joined by Steel Valley because no colorable claim was asserted against it. App. at 130a.

After the denial of Steel Valley's motion to remand, the defendants filed Rule 12(b)(6) motions to dismiss and Steel Valley sought a preliminary injunction prohibiting, among other things, American Standard's removal of equipment from the property. The district court in an order dated June 17, 1986 dismissed Steel Valley's complaint

---

**2.** At the time the district court assumed jurisdiction, all defendants had not concurred in the petition for removal. Nonetheless, removal without the consent of Meyer, Kopsa, and Radice Corp. was proper because the district court considered them fraudulently joined or nominal. "In applying this general rule, [that all parties must join in the removal petition] nominal or formal parties, unknown defendants, and defendants fraudulently joined may be dis-

regarded." 1A J. Moore & B. Ringle, *Moore's Federal Practice* ¶ 0.168[3.–2–2]; *see also* 14 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3731.

**3.** Rule 15(a) allows the amendment of a complaint as of right if the opposing party has not yet answered the complaint, as was the case here. Fed.R.Civ.P. 15(a).

against Meyer, Kopsa, and Radice-East with prejudice. It dismissed the action against American Standard without prejudice, leaving open the option of another action if Steel Valley moved to condemn the property.

 Steel Valley timely appealed from the final order of dismissal, raising before us the merits of the dismissal and the failure of subject matter jurisdiction.[4] Our resolution of this appeal necessarily must focus on whether Radice-East was an indispensable party whose joinder would require a remand of the proceeding to state court. Although a district court's determination of indispensability is subject only to review for abuse of discretion, *see Haas v. Jefferson Nat'l Bank of Miami Beach*, 442 F.2d 394, 395 (5th Cir.1971), where, as here, the district court did not make an explicit Rule 19 determination, we shall engage in an independent analysis of indispensability. *See Walsh v. Centeio*, 692 F.2d 1239, 1242 (9th Cir.1982).

## II.

Section 1447(c) of Title 28 of the United States Code mandates that: "[i]f at any time before final judgment it appears that the case was removed [from state court] improvidently and without jurisdiction, the district court shall remand the case...." *See Adorno Enter. v. Federated Dep't Stores*, 629 F.Supp. 1565 (D.R.I.1986) (accepting the plain meaning of the statute that jurisdiction must be monitored *after* removal). It is settled that the removal statutes[5] are to be strictly construed against removal and all doubts should be resolved in favor of remand. *Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26, 29 (3d Cir.1985).

 Ruling on whether an action should be remanded to the state court from which it was removed, the district court must focus on the plaintiff's complaint at the time the petition for removal was filed. *Id.* In so ruling the district court must assume as true all factual allegations of the complaint, *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir.1983), *cert. denied*, 464 U.S. 1039, 104 S.Ct. 701, 79 L.Ed.2d 166 (1984), and while nominal or fraudulently joined parties may be disregarded, indispensable parties may not. *Cf. supra* note 2. It remains the defendant's burden to show the existence and continuance of federal jurisdiction. *Abels*, 770 F.2d at 29; *see also* 14 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3739. That burden continues through judgment if not beyond. *Adorno Enter.*, 629 F.Supp. at 1567; *cf. Rubin v. Buckman*, 727 F.2d 71 (3d Cir.1984) (where plaintiff after trial claimed lack of diversity jurisdiction the district court was compelled to vacate the jury verdict in favor of the defendant and dismiss plaintiff's complaint).

 These principles have developed because the lack of subject matter jurisdiction voids any decree entered in a federal court and the continuation of litigation in a federal court without jurisdiction would be futile. Thus when a nondiverse party is added to a federal proceeding and that party's presence is indispensable to the furnishing of complete relief, remand is man-

---

**4.** We hold that the claims against Union Switch and Westinghouse Air Brake, although dismissed without prejudice, have been finally resolved. American Standard relies on *Borelli v. City of Reading*, 532 F.2d 950 (3d Cir.1976), in support of its argument that the dismissal was not a final and appealable order. Unlike *Borelli*, however, an amendment of the complaint would not cure what the district court perceived as the fatal defect of the complaint. Indeed, the district court indicated that "should the situation change and the Authority [Steel Valley] condemn the property," app. at 162a, only then could the action proceed. In such an instance,

however, the cause of action would be entirely different than the cause of action which the district court dismissed.

Here, Steel Valley chose to stand on its current cause of action ("waste"). We are satisfied that the district court order from which Steel Valley appealed is final and therefore appealable. *See B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 547–48 (5th Cir.1981); *Hall v. Pennsylvania State Police*, 570 F.2d 86, 88–89 (3d Cir.1978).

**5.** The federal removal statutes are found in 28 U.S.C. §§ 1441–1452.

dated where federal subject matter jurisdiction depends on diversity jurisdiction, even though removal was originally proper. *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 819 (9th Cir.1985); *Adorno Enter.*, 629 F.Supp. at 1573 ("It is beyond doubt that the emergence of an indispensable party, if nondiverse, should defeat subject matter (diversity) jurisdiction and require remand."); *Kaib v. Pennzoil Co.*, 545 F.Supp. 1267, 1269 (W.D.Pa.1982) ("The fact that plaintiff sought to add nondiverse parties following discovery does not [divest] this court of original jurisdiction and compel remand, unless they are indispensable parties."); *Lamar Haddox Contractor, Inc. v. Potashnick*, 552 F.Supp. 11 (M.D.La.1982) (addition of nondiverse indispensable defendant required remand to state court); *see also Field v. Volkswagenwerk AG*, 626 F.2d 293, 297 (3d Cir.1980) ("Whether a party may be dropped depends upon whether the party is 'indispensable' to a just and meaningful litigation of the claims...."); 1A J. Moore & B. Ringle, *Moore's Federal Practice* ¶ 0.161[2].

Applying these principles to Steel Valley's complaint, Steel Valley argues that when it amended its complaint to add Radice-East, a Pennsylvania corporation, the district court was divested of jurisdiction because Radice-East was an indispensable party.

### III.

The outcome of this appeal thus hinges upon our resolution of Radice-East's status as an indispensable party under Federal Rule of Civil Procedure 19. Indispensable parties, defined succinctly and clearly in the Supreme Court case of *Shields v. Barrow*, 58 U.S. (17 How.) 130, 15 L.Ed. 158 (1854), are "[p]ersons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Id.* at 139. "Indispensable

parties are persons who, in the circumstances of the case must be before the court," 3A J. Moore, *Moore's Federal Practice* ¶ 19.02, and "[w]hether a person is 'indispensable,' that is, whether a particular lawsuit must be dismissed in the absence of that person, can only be determined in the context of the particular litigation." *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118, 88 S.Ct. 733, 742, 19 L.Ed.2d 936 (1968); *see also Haas*, 442 F.2d at 396–97, *citing Shields*, 58 U.S. (17 How.) at 139.

■ Of necessity, an indispensability analysis is fact-specific, guided by the legal analysis outlined in Rule 19 of the Federal Rules of Civil Procedure. Therefore, "[t]he question of whether a person not joined is an indispensable party is determined on a case-by-case basis by (1) appraising his interest, and then (2) considering the equitable principles described in Rule 19." 3A J. Moore, *supra*, ¶ 19.02 n. 9. Moreover, in an action which involves real property, as is the case here, consideration must be given to the type of legal interest asserted in the property and the type of relief demanded by the plaintiff. 3A J. Moore, *supra*, ¶ 19.09[1].

### A.

We turn first to an examination of Steel Valley's amended complaint. Assuming as we must that the allegations in the complaint are true, *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981), Radice-East has been joined as the owner of the land and buildings where Union Switch is located and operates. The deed vesting title in Radice-East was made a part of Steel Valley's amended complaint. App. at 76a–83a. Steel Valley claimed that the *status quo* of the plants had to be maintained to enable its plan of acquisition and development to proceed. It asserted that any taking would be mooted by "the destruction of the underlying *res.*" App. at 73a.

Steel Valley's complaint therefore sought to enjoin all defendants, including Radice-East, from, among other things, disman-

tling, demolishing, destroying, or razing the buildings, machinery, equipment or fixtures forming part of the real estate of Switch Signal. . . ." App. at 74a. In addition, Steel Valley asked that the court require the defendants "to take reasonable measures to maintain and protect the condition of the property identified above until such time as the SVA [Steel Valley] can file its declaration of taking." App. at 75a.

Steel Valley's allegation of Radice-East's interest in the Union Switch property is not disputed. This allegation, which we take as true, requires us to discern whether the property interest Radice-East holds as the owner of the Union Switch real estate would be affected if the relief requested by Steel Valley were to be granted. If Radice-East is determined to be an indispensable party then the district court abused its discretion in (1) finding that Radice-East was fraudulently joined [6] and (2) failing to find that Radice-East was indispensable.[7]

Because there is no question that Radice-East is the owner of the land and the buildings, we direct our attention to the relief sought by Steel Valley. If Steel Valley's injunction were to be granted, it is obvious that Radice-East would be restricted to maintaining the buildings and property in their present condition and would be prevented from demolishing or altering them in any effort to utilize the Union Switch property for other purposes.

American Standard and Radice-East argue on appeal, however, that any relief given to Steel Valley by the district court would not affect Radice-East's interest in the property, because they claim that Radice-East is not entitled to possession under the terms of its sales contract with American Standard until 1988. American Standard specifically argues in its brief that "... any planned development by Radice-East clearly does not, and never did, represent a threat to the SVA." Appellee Amer-

**6.** In refusing to remand this case to state court, the district court concluded that Radice-East was fraudulently joined. A removing defendant, in this case American Standard, who charges that the plaintiff, Steel Valley, has fraudulently joined a party (Radice-East) in order to destroy diversity jurisdiction, has a heavy burden of persuasion. *B., Inc.*, 663 F.2d at 549. We have noted that the "[c]ourts have found joinder to be fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir.1985) (quoting *Goldberg v. CPC International*, 495 F.Supp. 233, 239 (N.D. Cal.1980)); *see also Nobers v. Crucible, Inc.*, 602 F.Supp. 703, 706 (W.D.Pa.1985). Fraudulent joinder analysis, however, is only appropriate in determining the propriety of removal. Here, Steel Valley admits that the initial removal was proper. Appellant's Brief at 11.

Where a plaintiff seeks to force remand of a properly removed case by the addition of a nondiverse defendant, the appropriate inquiry is whether that proposed defendant is indispensable under Rule 19. *E.g., Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 819 (9th Cir.1985); *Kaib v. Pennzoil Co.*, 545 F.Supp. 1267, 1270 (W.D.Pa.1982). This more stringent inquiry supports "the long-settled (and salutary) policy that a plaintiff cannot artificially force a retreat to the first (state) forum by embarking

purposefully on post-removal steps designed exclusively to foster remand." *Adorno Enter.*, 629 F.Supp. at 1570.

The district court disposed of Steel Valley's claim that Radice-East was an indispensable party without performing. a Federal Rule of Civil Procedure Rule 19 analysis. It held that Radice-East was fraudulently joined and that the claim against Radice-East was not colorable. It did so without regard to Steel Valley's assertion that the Union Switch buildings and plants were an integral part of Steel Valley's plan of taking and redevelopment.

**7.** Steel Valley cites *Singer v. Redevelopment Auth. of Oil City*, 437 Pa. 55, 261 A.2d 594 (1970) as support for its assertion in its complaint that Radice-East Hills "is the owner of the buildings, machinery, *equipment and fixtures forming part of the real estate* of Switch Signal." App. at 60a (emphasis added). Under the Pennsylvania common law Assembled Industrial Plant Doctrine "[i]f the machinery, whether fast or loose, is vital to the business operation of an 'industrial plant' and is a permanent installation therein, it is considered to be part of the real estate." *Id.* at 59, 261 A.2d at 596. This doctrine apparently has been applied in the areas of industrial mortgage situations, of local real estate taxation, and eminent domain law. *Id.*

However, for the reasons discussed in the text, *infra*, we do not find it necessary to rely on Steel Valley's theory of Assembled Industrial Plant Doctrine in our disposition of this appeal.

ican Standard's Brief at 20. American Standard asserts that because Radice-East cannot develop the property until 1988, and no court would grant a temporary injunction which would extend until 1988, Steel Valley cannot complain about Radice-East Hill's conduct relative to the property. Consequently, American Standard contends that Radice-East is not a "factually indispensable party."

The record, however, does not contain the American Standard—Radice-East sales contract nor does the record disclose that Radice-East's possessory interest in the property will not vest until 1988, although that argument was made to us orally and in American Standard's brief. In this latter respect, the record is completely silent. Even assuming, however, that the postponement of possession by Radice-East was established by the record, which it is not, it would not alter our conclusion. Any injunction against dismantling, razing, or demolishing the Union Switch buildings obviously would have a direct impact on Radice-East's interest, even if its right to possession of the buildings was delayed. Moreover, even though we cannot evaluate, let alone adjudicate, the property rights of Radice-East and American Standard, if a material breach of the sales agreement were to occur, the possibility exists that Radice-East's right of possession might accelerate.

We also recognize that the relief sought by Steel Valley is essentially the maintenance of the *status quo* (i.e., the plants are to remain as industrial facilities) until its plan of acquisition and development can be implemented. The preservation of such a *status quo* would obviously defeat any prospects that Radice-East might have to develop the property for residential or other commercial purposes.

In sum, as we have pointed out, giving credit to Steel Valley's allegations, there is nothing that appears in the complaint concerning Radice-East's postponed possession. Only Radice-East's real property and building ownership is established. The relief sought by the complaint is an injunction prohibiting *all defendants* at *all times* from disturbing the buildings and their contents. Steel Valley also sought, as an essential component of relief, an affirmative injunction to have the property owners maintain the Union Switch property in its present condition.

Thus the complaint establishes Radice-East as the owner of the Union Switch property and buildings and reveals that Steel Valley, as a part of its relief, seeks to restrict, limit, and affect Radice-East's rights and/or interests in the property.

### B.

An "indispensability" analysis must start with Federal Rule of Civil Procedure 19(a), which states that:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party....

If a party falls into either of the above two categories, but may not be joined because jurisdiction would be destroyed, the court must determine under Rule 19(b) whether "in equity and good conscience" the action should proceed without the absent party or whether the absent party is indispensable and the action should be dismissed (or, in the case of removal, remanded).

Under the factors set out in Rule 19(a), Radice-East is clearly a party to be

joined if feasible. First, Steel Valley would not be able to obtain complete relief if Radice-East were not joined.[8] Any actions taken by Radice-East with respect to its property, particularly actions which required razing or demolition of the buildings, would undoubtedly affect the success of Steel Valley's development plans. Conversely, any injunction requiring Radice-East to maintain the *status quo* of its property as industrial property would undoubtedly affect the rights of Radice-East as a property holder, and the injunction sought by Steel Valley, if granted, would necessarily affect the alienability of Radice-East's property and its ability to improve the property in accordance with any plans it may have made. Thus, in terms of 19(a), complete relief could not be accorded to Steel Valley without Radice-East's presence nor could Radice-East protect its very substantial real estate interest in the property if it were not a party to Steel Valley's action.

### C.

Having concluded that Radice-East had to be joined as a party to the action if feasible, we turn to the provisions of Rule 19(b) to ascertain whether the district court could have proceeded without Radice-East being joined as a party. The factors that must be considered in an analysis under Rule 19(b) are:

> ... first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Since Radice-East could not be made a party without destroying the district court's subject matter jurisdiction, the district court was required to "... determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent party [Radice-East] being thus regarded as indispensable." Fed.R.Civ.P. 19(b).

To arrive at such a determination, Rule 19(b) provides four factors to be taken into consideration. In an earlier discussion of Rule 19(a) of this opinion we touched upon considerations bearing on the first factor of 19(b), i.e., prejudice to the parties. We concluded that any judgment rendered in Radice-East's absence would necessarily be prejudicial to Radice-East's property interests.

The second factor of 19(b) directs the court to consider the extent to which the shaping of relief might avoid or lessen any prejudice to the parties. There has been no suggestion made that the relief which Steel Valley seeks could be decreed without significantly affecting Radice-East's property interest. Any injunction that precluded Radice-East's full use of its property for purposes other than for which it is presently being utilized, would of necessity prejudice Radice-East. We cannot envisage how such prejudice could be lessened or avoided if an injunction, no matter how shaped, were to issue.

The third factor requires us to consider "whether a judgment rendered in the person's [Radice-East's] absence will be adequate." Fed.R.Civ.P. 19(b). Focusing on Steel Valley, we are obliged to conclude that Steel Valley would not be able to receive full relief without the joinder of Radice-East. Because of its ownership interest and landlord status, Radice-East could readily undermine Steel Valley's plan, and therefore the effectiveness of any injunction decreed, by entering and possessing the buildings (with or without

---

8. We recognize that Radice-East became a party to this action after Steel Valley amended its complaint to add Radice-East, a Pennsylvania corporation, in place of Radice Corp., a Florida corporation. The district court retained jurisdiction of the proceedings only because it found that Radice-East had been fraudulently joined, and thus on that theory, its joinder did not divest the court of its jurisdiction.

American Standard's permission) if it were not bound by a district court order. It is obvious to us that, in the absence of Radice-East as a party, it will be impossible to resolve the controversy between Steel Valley and American Standard. Necessarily inherent in Steel Valley's cause of action is that the buildings and property owned by Radice-East are integral to Steel Valley's industrial development plan. Therefore, because no plan could be proposed or succeed without taking into consideration these particular buildings, a judgment rendered in Radice-East's absence would not bind Radice-East and thus, without question, would undercut Steel Valley's industrial development plan. Hence, in terms of Rule 19(b), a judgment, even though rendered in favor of Steel Valley, but in the absence of Radice-East, would be inadequate.

Finally, we are instructed to consider "whether the plaintiff [Steel Valley] will have an adequate remedy if the action is dismissed for nonjoinder." Fed.R.Civ.P. 19(b). Clearly, the Pennsylvania state court is a ready forum available to all parties. This fact favors a finding of indispensability and thus would require a remand to the state court. Not only is the state court available for resolution of this controversy, but it also may be the most appropriate forum for consideration of Steel Valley's particular cause of action, *see Tick v. Cohen,* 787 F.2d 1490, 1495 n. 5 (11th Cir.1986) ("presence of a state forum has been found to be particularly compelling in diversity jurisdiction cases"), which, among other features, includes real property interests—traditionally a state concern.

Therefore, consideration of each of the Rule 19(b) factors leads to the conclusion urged upon us by Steel Valley [9] that Radice-East is an indispensable party to Steel Valley's action.

As a result of our independent Rule 19 analysis, we are satisfied that Radice-East must be joined in the present action, and that the district court abused its discretion by failing to so hold. Because it improperly exercised its discretion, first in its finding of fraudulent joinder, and, second, in failing to find Radice-East to be an indispensable party pursuant to a Rule 19 analysis, the district court declined to remand Steel Valley's action to the state court. In so doing, the district court improperly retained jurisdiction over Steel Valley's claims and resolved the merits of Steel Valley's action, which it should not have addressed, let alone have decided.

## IV.

Having concluded that Radice-East is an indispensable and nondiverse party to Steel Valley's action, we will reverse and direct the district court (1) to vacate its order of June 17, 1986, which granted the defendants' motions to dismiss on the merits and (2) to remand this proceeding to the Court of Common Pleas of Allegheny County, Pennsylvania.

---

9. Steel Valley's brief analyzed the 19(b) factors as follows:

> With respect to the first factor, a judgment rendered in the absence of Radice-East Hills would be prejudicial to Radice-East Hills. For example, "freezing" the Switch and Signal industrial facility impairs Radice-East Hills' right to use and enjoy that property. Such a judgment would be prejudicial to SVA as well since complete relief could not be accorded if Radice-East Hills is able to pursue its own development of the land and buildings at Switch and Signal. SVA submits, with respect to the second factor, that prejudice to Radice-

> East Hills or to itself could not be avoided by the shaping of relief because SVA's prayer is diametrically opposed to the announced interest of Radice-East Hills to change the entire character of the property. Third, and without repetition of the above stated contentions, a judgment rendered in the absence of Radice-East Hills would be inadequate in protecting the interests of Radice-East Hills and/or SVA. With respect to the fourth factor, the fact that remand is an option in the case at bar provides SVA with an adequate, available remedy in state court.

Appellant's Brief at 23.