J. Barry MacNEAL, Individually and On Behalf of All Other Similarly Situated Participants in the Columbine Exploration Corporation Drilling Programs

v.

**COLUMBINE EXPLORATION CORPORATION.**

Civ. A. No. 87–8322.

United States District Court, E.D. Pennsylvania.

Dec. 1, 1988.

Jean C. Hemphill, Philadelphia, Pa., for plaintiff.

George J. Miller, Philadelphia, Pa., Karen Lee Turner, for Columbine Exploration Corp.

George J. Miller, Karen Lee Turner, Peter Weidman, Philadelphia, Pa., for Wichita River Oil Corp.

Mark A. Shaiken, Dechert Price & Rhoads, Philadelphia, Pa., pro hac vice.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

On February 18, 1988, plaintiff, J. Barry MacNeal, individually and on behalf of all other similarly situated Participants in the Columbine Exploration Corporation Drilling Programs (hereinafter "Participants") filed a motion for class action determination under Federal Rule of Civil Procedure 23(c)(1). For the reasons stated herein, plaintiff's motion will be granted with respect to the "MacNeal Group" and denied with respect to the "Wyoming Group."

On October 14, 1988, defendants, Columbine Exploration Corporation ("Columbine") and Wichita River Oil Corporation ("Wichita"), filed a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(7) for failure to join indispensable parties. For the reasons stated herein, defendant's motion will be denied.

## I. BACKGROUND

This action was brought to terminate the Operating Agreement between Columbine and the Participants and for an accounting. Filed in December 1987, the action originally requested an accounting and a preliminary injunction to compel Columbine to escrow monies withheld from plaintiffs for future tax obligations. Plaintiff contends that the monies are in fact being used for Columbine's general operating expenses. The court denied the preliminary injunction and two days later Wichita contracted with Columbine to take over operation of the 80

wells. Thereafter, plaintiff sought to join Wichita as a party to this action and to expand the relief requested to include the termination of the Operating Agreements. By order dated May 25, 1988, the court granted plaintiff leave to amend the Complaint to add Wichita as a party and to expand the requested relief.

In the meantime, other working interest owners in these 80 wells brought a class action suit against Wichita and Columbine in a Wyoming state court. On May 6, 1988, counsel for plaintiffs in this case received two notices of the Wyoming class action: (1) a notice of the initiation of the proceedings and (2) a notice that a Stipulation of Settlement would be entered by the Wyoming court soon thereafter. The Wyoming class action was settled on June 24, 1988, a consent order was entered, and Wichita River was appointed operator of the 80 wells. Plaintiff and a *majority* of other non-operating working interest owners in the 17 wells at issue in this action filed an election to opt out of the Wyoming class action. They did not support either Columbine or Wichita River serving as the well operators for those 17 wells. Despite the fact that a majority of the non-operating working interest owners for the 17 wells at issue here opted out of the Wyoming class action, Wichita River claims that it is the operator of these wells as a result of the Wyoming settlement. The issue in this action is who will operate 17 of the 80 oil and gas wells, since members of both the MacNeal Group and the Wyoming Group own interests in those wells.

## II. DISCUSSION

In the Wyoming class action, Wichita did not object to the class determination on the grounds that indispensable parties such as plaintiff had opted out of the class action. Now, however, Wichita argues: (1) the plaintiff class cannot include any of the Wyoming Class Members who are bound by the Wyoming settlement with respect to the 17 wells in issue and (2) if the court restricts the plaintiff class to the MacNeal Group, then the action must be dismissed for failure to join the Wyoming Class Members who are indispensable parties.

The prerequisites to a class action are set forth in Federal Rule of Civil Procedure 23(a):

(a) One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The standard for determining if a class action suit may be maintained is covered in subsection (b):

(b) An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate ac-

tions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

As Wichita correctly points out, the burden of proving that the requirements of Fed.R.Civ.P. 23 have been met is on the party seeking to certify a class action. *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir.1974). Therefore, MacNeal has the burden of showing that all four prerequisites of subdivision (a) have been met, as well as one of the requirements of subdivision (b) of Rule 23. *See* Fed.R.Civ.P. 23, *supra.*

■■■ Fed.R.Civ.P. 23(a)(1) sets forth that a class action may only be maintained if "the class is so numerous that joinder of all members is impracticable." MacNeal has alleged that he seeks to represent a class of at least 36 members: the MacNeal Group alone is comprised of 36 members. Wichita argues, however, that "in determining the numerosity requirement, the court should not lump together all working interest owners in all wells in question." DEFENDANT'S OBJECTION TO CLASS CERTIFICATION, p. 7. Wichita cites *Sharp v. Hilleary Franchise Systems, Inc.*, 56 F.R.D. 34 (E.D.Mo.1972) for this proposition. However, in contrast to the present case, the plaintiff in *Sharp* wanted the class to "consist of all persons who purchased certificates of limited partnership in limited partnerships in which HFS is a general partner." *Id.* at 36. Yet, the court ruled that the claims were based on different enterprises (with each "enterprise" being a separate limited partnership) and so limited the class to the certificate holders in each of the limited partnerships. *Id.* at 37. In the present case, the claims of the MacNeal Group deal with the same enterprise and not separate limited partnerships. Consequently, the class may include all members who own an interest in several of the pertinent 17 oil and gas wells who did not participate in the Wyoming settlement.

Because there are 36 members of the MacNeal Group, the *Sharp* court's holding denying class certification is inapplicable here. The *Sharp* court concluded that with "no more than 20 limited partners, all of whom are named on the certificate and thus known to plaintiffs" it would not "be impracticable to join all of them their number being so few." *Id.* at 37. Furthermore, as stated by the court in *In re Anthracite Coal Antitrust Litigation*, 78 F.R.D. 709 (M.D.Pa.1978), "[t]he numbers of the proposed class are not themselves determinative as to whether joinder is impracticable. The circumstances that exist in each case must be analyzed." *Id.* at 715. Clearly, one of the purposes of the class action is to "provide a mechanism for people with small claims to redress their grievances." *Id.* Other factors courts have looked at include: (1) "whether each member of the purported class could be joined without an undue burden on the plaintiff, *see, e.g., Ward v. Kelly*, 476 F.2d 963, 964 (5th Cir.1973); (2) the geographic location of class members, *see, e.g., DeMarco v. Edens*, 390 F.2d 836, 845 (2d Cir.1968); and (3) "the geographical dispersions of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim," *see, e.g., Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir.1981). As stated by the court in *DeMarco*, it is essential that courts "not be so rigid as to depend upon mere numbers as a guideline on the practicality of joinder." Rather, "a determination of practicability should depend upon all of the circumstances surrounding a case." *DeMarco*, 390 F.2d at 845. As stated by the court in *Coco–Cola Bottling Company of Elizabethtown v. Coca–Cola Company*, 95 F.R.D. 168, 175 (D.Del.1982), "[u]nder the rule [23(a)] it need not be impossible to join all members, but simply impracticable." *C.f., Alvarez v. City of Philadelphia*, 98 F.R.D. 286, 292 (E.D.Pa. 1983) ("Impracticability is a subjective determination based on number, expediency and inconvenience of trying individual suits.").

Wichita claims, however, that the court should exclude immediate family members, subsidiaries, affiliates, and controlled members, when determining the size of the class. *Kohntopp v. Butcher*, 98 F.R.D. 551, 553 (E.D.Tenn.1983). However, even excluding family members, there is still a sufficient number in the MacNeal Group to satisfy the numerosity requirement.

■ Next, it is the court's role to examine the factors of commonality, typicality and adequacy of the representation to determine whether it is appropriate to certify the proposed class. With respect to commonality, Wichita contends that "breach of contract actions do not lend themselves to class actions because they rarely present common questions of law and fact." DEFENDANTS' MOTION IN SUPPORT OF OBJECTION TO CLASS CERTIFICATION, p. 10. In *Crawford v. Texaco, Inc.*, 40 F.R.D. 381 (S.D.N.Y.1966), the court denied class certification of an action relating to breaches of oil and gas leases. The issue before the *Crawford* court was "whether plaintiff's interests [were] compatible with and not antagonistic to those she purport[ed] to represent." *Id.* at 385. The court determined that "an action seeking to terminate an agreement for claimed violation of its terms may not be brought on behalf of the class when a number of its members assert no breach." *Id.* In the instant case, since the Wyoming Group is bound by its settlement, the members of the Wyoming Group may not assert a breach. Hence, MacNeal may not represent the Wyoming Group. On the other hand, common issues are raised among MacNeal and members of the MacNeal Group: (1) Does Columbine have a contractual obligation to escrow or otherwise preserve the tax monies collected and withheld?; (2) Is it lawful for defendants to use the tax monies withheld from the Participants for general operating expenses?; and (3) Do the Participants have a right "to an accounting of all taxes withheld, all taxes paid or assessed but unpaid, and all future taxes which must be paid on account of past and current oil and gas production"? PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CLASS

ACTION DETERMINATION, p. 3. Class action treatment of the MacNeal Group is appropriate with respect to the commonality issue.

■ With respect to the typicality requirement, "representative claims need only be typical, not identical, to the claims of the class." *Fisher Bros. v. Mueller Brass Co.*, 102 F.R.D. 570, 575 (E.D.Pa. 1984). Recently, it was held that the "typicality requirement is met if the plaintiff's claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *In re Chlorine & Caustic Soda Antitrust Litigation*, 116 F.R.D. 622, 626 (E.D.Pa.1987). In the instant case, the members of the MacNeal Group "signed identical participation agreements, were members of the same Drilling Program, and were treated identically with respect to the withholding of funds on account of taxes." PLAINTIFF'S MOTION FOR CLASS DETERMINATION, p. 4. The fact that there are separate operating agreements independently executed over a course of three years, with different parties to the agreements, and governing the operation of different wells, does not change the fact that the members of the MacNeal Group are entitled to an accounting and an explanation of how the withheld funds were used. It is the opinion of this court that the MacNeal Group satisfies the typicality requirement.

■ Finally, this court must determine whether plaintiff adequately represents the class. There are two factors to consider: (1) "plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation" and (2) "plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Defendants do not contest the ability of plaintiff's attorney to conduct the proposed litigation. Rather, defendants allege that plaintiff has interests antagonistic to those of the class he seeks to represent. This court is not per-

suaded by defendants' claim that plaintiff "has an ulterior motive in commencing this lawsuit, which is not to obtain the relief that he in fact seeks in this lawsuit, but to attempt to remove the wells in which he has an interest from the drilling program." PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CLASS ACTION DETERMINATION, p. 4. As an experienced securities broker with interests paralleling those of the MacNeal Group members, MacNeal is capable of adequately representing the MacNeal Group. Both MacNeal and the MacNeal Group seek to remove Wichita and/or Columbine as the operator. While MacNeal is not a party to all of the operating agreements in question, and he does not own interests in all 17 of the pertinent wells, his interests are coextensive with the interests of the other members of the MacNeal Group. Thus, MacNeal has satisfied the requirements of Rule 23(a)(4).

 Under the requirements of Rule 23, after fulfilling the prerequisites of Rule 23(a)(1)–(4), the plaintiff must establish that his case falls within the boundaries of Rule 23(b)(1), (2), or (3). Since the certification of this action may expose the Wyoming Class Members, Wichita, Columbine and the MacNeal Group to two inconsistent orders regarding the operation of the 17 wells, 23(b)(1) is not applicable. Furthermore, as MacNeal has neither brought this as a declaratory judgment action pursuant to 28 U.S.C. § 2201 nor sought injunctive relief, Rule 23(b)(2) is not satisfied. However, there are common questions of law or fact pertaining to an accounting of the monies given for taxes covering the 17 wells at issue.

The wells are located in Wyoming, and to eliminate possible conflicts, each agreement included a choice of law provision selecting Colorado as the applicable law with respect to the operating agreements. Each agreement also contained identical provisions and terms. Furthermore, the agreements did not involve individual property rights. Thus, this case can be distinguished from *Estate of Remley v. Amoco Prod. Co.*, 100 F.R.D. 419 (S.D.Tex.1983).

In *Remley*, the court denied class certification against AMOCO, the operator, because rather than having "a collective duty to all of the lessors in the field to prevent field-wide drainage," AMOCO "owed the duty to each leasehold individually." *Id.* at 421. The *Remley* court determined that because the reservoir was a finite resource "each claimant would be competent to show what he could recover" and this inherent conflict would defeat the benefit of certifying a class. *Id.* at 422. In the present case, we are not talking about the "unique quality of each lease property." *Id.* Rather, this case concerns whether the money invested in 17 wells was unlawfully used by Columbine to pay general operating expenses. With each member of the MacNeal Group requesting an accounting of funds, there is no need for each claimant to bring a separate claim. Additionally, each oil and gas well, though arguably distinct, does not involve different operational activities. Thus, it is clear that common questions do predominate.

 As defendants correctly point out, the United States Court of Appeals for the Third Circuit has set forth the following criteria for determining the superiority of the class action to other actions:

> Superiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large and (6) of the defendant ... Superiority must also be looked at from the point of view of the issues.

*Katz v. Carte Blanche Corp.*, 496 F.2d 747, 760 (3d Cir.), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). Thus, the members of the MacNeal Group, after opting out of the Wyoming Class, have a right to their day in court to protect their interests. Because several of the MacNeal Group members have small interests, and individually they might not have the wherewithal to bring suit to protect their individual rights, class relief is superior to any other relief available in this case. *See In re Chlorine & Caustic Soda Anti-*

*trust Litigation,* 116 F.R.D. 622, 627 (E.D. Pa.1987).

■ Finally, this court must determine whether this action should be dismissed for failure to join indispensable parties. Fed. R.Civ.P. 19 provides:

(a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

(b) If a person as described in subdivision (a) (1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent party being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measure, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. . . .

(d) This rule is subject to the provisions of Rule 23.

In *Steel Valley Authority v. Union Switch & Signal Division,* 809 F.2d 1006, 1011 (3d Cir.1987), the Court of Appeals stated that "an indispensability analysis is fact-specific." Whether a person not joined is an indispensable party "is determined on a case-by-case basis by (1) appraising his interest, and then (2) considering the equitable principles described in Rule 19." *Id.* Clearly, the Wyoming Class Members have an interest in the outcome of this action: a judgment rendered in favor of the MacNeal Group would adversely impact the Wyoming Class Members. However, the Wyoming Class Members did not object to proceeding in the Wyoming class action without the MacNeal Group, which represents a majority of non-working interest owners in the 17 wells at issue. Given that the MacNeal Group legitimately opted out of the state court action and its members represent the majority of the ownership interest in the pertinent wells, it is this court's opinion that the members of the Wyoming Class are not indispensable parties. As pointed out by the plaintiff, complete relief can be awarded to the plaintiff class in the absence of the minority interest owners. The minority working interest owners' interest will not be impaired or impeded by their ability to be involved in this suit because their interest will rightly be determined by the majority regardless of their joinder.

Furthermore, Wichita has failed to establish that without joining the minority working interest owners, complete relief in this breach of contract action cannot be granted. In order to prevail, plaintiff must prove that the operator has either performed its duties in a grossly negligent manner or committed wilful misconduct in operating the wells. If plaintiff is successful in establishing that the operator has not adequately performed its duties, it is also in the interest of the minority working interest owners to have the court terminate the services of the operator.

## III. CONCLUSION

Accordingly, I will deny defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(7) and 19. I will also certify a class of plaintiffs consisting of Participants in the Columbine Exploration Corporation Drilling Program Oil and Gas Wells KGS # ¼, state # 15–½, state # 16–⅛, and Tenneco # 32–⅛, who opted out of the Wyoming class action.